## HOPSON *against* DOOLITTLE and others.

A valid award cannot be repudiated, by the mere act of one of the parties.

It prevents the parties and privies from litigating the same matter determined by it.

Where *A*, the owner of land through which a stream of water flowed, and *B*, the owner of a mill on the same stream below, submitted to arbitrament the question whether *B* had a right to flow *A's* land, without making compensation therefor, and if not, what sum *B* should annually pay to *A*, as such compensation; and the arbitrators awarded, that *B*, in case he should shut his dam by the 1st of *October* annually, and let off the water by the 1st of *May* following, should pay to *A* seven dollars a year, or five dollars a year, in case *B* should shut up the same, on or after the 1st of *January* thereafter; it was held, that it did not appear, with reasonable certainty, that the question whether *A's* land was subject to be flowed by *B*, as of right, upon the payment of an adequate compensation, was submitted; nor did it more certainly appear from the award, that *B* had a right to flow *A's* land, upon the payment of a compensation, or upon any terms, but only that *if B* enjoyed the easement, he should pay a certain sum to *A*. Consequently, it was held, in an action on the case, brought by *A* against *B*, for flowing *A's* land, that such award was no defence to the action.

*Qu.* Whether a mere parol submission and award can have any effect upon the title to real estate, by way of estoppel or otherwise ?

The court will not regard a motion for a new trial for a verdict against evidence as before them for consideration, unless it contain a statement of the evidence, reported by the judge.

THIS was an action of trespass on the case for flowing the plaintiff's land.

The cause was tried at *New-Haven, January* term, 1839, before *Bissell,* J.

On the trial, the plaintiff introduced evidence to prove, that

the defendants, in the fall of 1837, had re built an ancient dam across the stream mentioned in the declaration, on land of *Joseph Doolittle*, one of the defendants, by means of which the water was impeded and made to flow the plaintiff's land to its injury.  It was admitted, that, at this time, the defendants were owners, as tenants in common, of a saw-mill, at the *Southern* end of the dam, and worked by the water from the pond raised thereby; which saw-mill was first erected, by those under whom the defendants claim, about the year 1765, and had been re-built and kept up from that time.

New-Haven, July. 1839.

Hopson
v.
Doolittle.

The defendants introduced evidence to prove a right in the former owners of the saw-mill, whose estate the defendants have, to maintain a dam of the present height, acquired by adverse enjoyment thereof, during a period of more than fifteen years, anterior to the plaintiff's ownership of the land so flowed.

The plaintiff, to repel the claim derived from such adverse user, offered evidence to prove, that the present dam is of greater height than the one formerly kept up, by the owners of the saw-mill, and a greater quantity of water was thereby thrown back upon his land.   The plaintiff also introduced testimony to prove, that at divers times since the first erection of the saw-mill dam, the owners of the saw-mill had paid rent for the privilege of flowing the plaintiff's land to the former owners thereof and also to the plaintiff since he became owner, at the rate of forty shillings *per annum*.   The plaintiff further offered testimony to prove, that in the year 1829, *Samuel Doolittle* and *George Merriman*, who were then the owners of the saw-mill, and the plaintiff, submitted to the arbitrament of *Aaron Dutton* and *William Marks*, the question whether the saw-mill owners had a right to flow the plaintiff's land, without making compensation therefor ;  and if not, what sum those owners should annually pay to the plaintiff as such compensation : that the arbitrators, after hearing the parties and their evidence, awarded that the saw-mill owners, in case they should shut their dam by the 1st day of *October*, annually, and let off their water by the 1st day of *May* following, should pay the plaintiff seven dollars a year, or five dollars a year, in case they should shut up the water on or after the 1st day of *January* thereafter.   In connexion with this evidence, the plaintiff offered his book to prove, that *Samuel Doolittle*, *George Merriman* and *Joseph Doolittle* had, on the basis of this award,

paid their respective proportions of the sums annually due under it.

The defendants denied that there was any evidence, introduced by the plaintiff, to prove any demand made by him for the annual sum for flowing the land; or that they, or either of them, had at any time refused to perform the award; or that the plaintiff had notified the defendants, or either of them, to remove the dam, prior to the commencement of this action. The plaintiff, on the other hand, claimed to have proved, that the owners of the saw-mill had claimed, for more than three years before the commencement of this action, that the flowing of the plaintiff's land did him no injury, and insisted upon their right to keep up the dam without any compensation to the plaintiff therefor.

Upon these facts, the defendants prayed the court to charge the jury, that the plaintiff could not sustain this action, but only an action founded on the award.

The court charged the jury, that if they should find the award proved, the plaintiff could not recover in this action, unless they should also find, that the defendants had repudiated the award, and claimed to keep up the dam, as matter of right, independently of the award; or unless they should find, that the defendants, in 1837, raised their dam above the height of the former one, to the injury of the plaintiff.

The jury found, that the defendants had not so raised their dam, but had repudiated the award, and claimed a right to keep up the dam independently thereof; and thereupon they returned a verdict for the plaintiff.

The defendants moved for a new trial for a misdirection, and also on the ground that the verdict was against the evidence in the cause.

*Baldwin,* in support of the motion, contended, 1. That the plaintiff could not sustain an action on the case against the defendants as tort-feasors. If the award established any thing, it established the rights of both parties, *viz.* the right of the mill-owners to keep up their dam at its ancient height, and the right of the plaintiff to demand and enforce payment of the annual compensation. It did not establish the right of the plaintiff to have his land *disencumbered* of the easement; but established, for the benefit of both parties, the rate at which

that easement should be enjoyed.   The condition of the parties, the mill-dam, &c. and the prior use are to be considered in connexion with the award; and it is apparent, that their design was not to regulate and define their rights in reference to the future use.   On the one hand, the award gave to the mill-owners the right of flowing as before ; and on the other, to the plaintiff the right to the stipulated compensation.   The submission did not give *power* to the arbitrators to determine the one, without also determining the other.   When the defendants, therefore, continued to use the dam after the award, the plaintiff had, by virtue of it, a right to sue them in *assumpsit* for the annual compensation ; but he had no right to treat them as wrong-doers, and sue them in trespass.   If, when he called upon them for the stipulated sum, they had all refused to pay it, and declared, that they were then in the exercise of their own right, he might sue them in *assumpsit* on the award ; and this right would continue until both parties put an end to the relation.   Neither party, without the other, could put an end to it.

2. That the defendants were not proved to have done any act, which could be considered as repudiating the award ; and there was no evidence in support of the plaintiff's claim.

*Mix*, contra, contended, 1. That the charge of the court, if it erred, did so for the defendants.   It went too far, perhaps, in saying that the suit should have been on the award, in any event.   The award was clearly introduced to shew that the title was settled in the plaintiff.   It was *temporary* only.   If it settled any thing to be permanent, it was only the measure of damages—as seven or five dollars—not the form of action.   Besides, it related to a matter of *realty*, which cannot be transferred by award, though the award may settle the right in a proper form of action, as ejectment.   *Watson* on *Awards* 38, 9. 142, 3.   *Shelton* v. *Alcox* & al. 11 *Conn. Rep.* 240. But certainly the charge went as far as the law would allow for the defendants.   And it would seem precisely as far as they requested it should go.   If the defendants repudiate the award, they cannot complain if the plaintiff meets them and does the same.   In that event, this is the only remedy the plaintiff would have.   He ought to have, at least, an election, either to disavow the award, or to sue on it as against the defendants.

*New-Haven,*<br>
July, 1839.<br>
<br>
Hopson<br>
*v.*<br>
Doolittle.

*New-Haven,*
*July, 1839.*
——————
Hopson
*v.*
Doolittle.

2. That the verdict is not against evidence. The court will not grant a new trial, unless the verdict is manifestly and palpably against the weight of evidence, and the result ought in justice to be different. 11 *Conn. Rep.* 440. 12 *Conn. Rep.* 212.

HUNTINGTON, J. It was not denied, in the argument of this cause, that the plaintiff ought to retain the verdict in his favour, unless the instruction, "that the defendants might repudiate the award," was incorrect in point of law. It is contended, that the charge, in this particular, was erroneous. The objection to it assumes that the award settled the rights of both parties, and is binding on both, establishing the right of the defendants to flow the plaintiff's land, and of the plaintiff to the compensation granted therefor. The instruction asked by the defendants, was, "that the plaintiff, upon the facts claimed to have been proved at the trial, could not sustain *this* action, but only an action founded on the award." The award was interposed as a bar to this suit. It was claimed to be a legal subsisting award, which, while it continued in force, was a complete answer to the present action. As therefore the *gravamen* of the defence was an award supposed to be valid and conclusive as to the matter in controversy, it is quite clear, that if it possesses no such legal efficacy, and ought not to have any operation on the rights of the plaintiff in this suit, the opinion expressed that it might be repudiated, has done the defendants no injury, and a new trial ought not to be granted. The case was submitted to the jury, upon a charge less favourable to the plaintiff than that to which he was entitled ; and having obtained a verdict, it ought not to be disturbed.

We think the position, that a legal, valid award, cannot be repudiated, by the mere act of one of the parties, is a sound one. We know of no principle or precedent, which sanctions the doctrine that such an award may be treated, by either party, as binding or nugatory at his pleasure. It is in general likened to the judgment of a court, as to its effects upon suits for the same cause of action. It prevents the parties and privies from again litigating the same matter determined by it. We perceive nothing in the subject of this submission and award, which should make them an exception to this general

*New-Haven,*
July, 1839.
_____
Hopson
*v.*
Doolittle.

rule. If they are such as to preclude the plaintiff from maintaining the present action, there is no equitable or legal principle, which would justify us in refusing to give full effect to the award: much less is there any such principle, which confers on either party, independently of the other, the right to reject it, so far as it has any legal operation.

But although we are of opinion that the charge in this particular cannot be sustained, we think that the award is not a bar to the plaintiff's action. It does not appear from the motion, whether the submission and award were oral, or in writing not under seal, or by deed. In the result to which we have come, we have not deemed this point material. And we take occasion to remark, that we purposely decline the examination and decision of the question whether a mere parol submission and award *not in writing,* can have any effect upon the title to real estate, by way of estoppel or otherwise. It is not necessary to a proper disposition of the case before us; and should be settled only after argument and upon full deliberation. In our judgment, the award is inoperative as a defence to this suit, inasmuch as it may, perhaps, be fairly inferred, that the rights of the plaintiff which he now seeks to enforce, were neither submitted to the decision of the arbitrators, nor ascertained and determined by their award so as to bar the present suit; at least, we cannot say, that it appears with reasonable certainty, from the submission and award, that these rights were so submitted or settled as to preclude a recovery in this action. We had occasion, in *Shelton* v. *Alcox* & al. 11 *Conn. Rep.* 240., to advert to the rules relating to the certainty necessary to constitute a valid submission and award. We there said, the ancient strictness in construing submissions is passed away; and they are now to be construed according to the true intent of the parties. The question, in every case, is, whether it can be ascertained with sufficient certainty, what the parties intended to submit. We adhere to the opinion there expressed. We shall be governed by the rule which it establishes, in our decision of the present case.

It is stated in the motion, that the parties submitted to arbitrament, "the question whether the saw-mill owners had a right to flow the plaintiff's land, without making compensation therefor; and if not, what sums the owners should annually pay to the plaintiff, as such compensation?" The arbitrators award-

ed, " that the mill owners, in case they should shut their dam by the first day of *October* annually, and let off their water by the first day of *May* following, should pay the plaintiff seven dollars a year ; or five dollars a year, in case they shut up the same on or after the first day of *January* thereafter." We are inclined to the opinion, that the plaintiff did not intend to submit, and that he did not in fact submit, the question whether his land was subject to be flowed by the defendants as of right, upon the payment by them of an adequate compensation : at least, we do not feel at liberty to say that it appears with reasonable certainty, that such was intended to be, or was in fact, the submission. The owner of land may claim that another has no right at all to flow his land, and at the same time insist, that under no circumstances, has he such right, without making compensation. A person who denied wholly the right of another, upon any terms, to an easement in his land, and who would refuse to submit that matter to arbitrament, might be willing to refer the question of compensation. A submission of the latter subject, would leave the question as to the right to the easement upon making compensation, entirely out of the controul of the arbitrators. They could not pass upon it, for want of authority. It would not reach the question whether the land might be used, by paying for the use.

In the present case, it was not expressly submitted to the arbitrators to decide whether the saw-mill owners had a right to flow the plaintiff's land, upon making compensation ; but whether they had this right, without making compensation : and the arbitrators might find that no such right existed, without the payment of an equivalent ; and neither intend to decide, nor in fact decide, that the land was subject to the user, if an equivalent was paid or tendered. Our prevailing opinion is, that it is a reasonable construction of this submission, that the parties, by referring only the questions whether the defendants could flow the plaintiff's land without compensation ; and if not, what the amount of that compensation should be ; designedly withheld from the arbitrators, the consideration of the question whether it could be flowed, provided compensation was made or offered.

If it be said, however, that this construction is open to some objections, we add, that it is not necessarily implied that the parties submitted the question of the right to flow, on the con-

dition that remuneration was made.  It is, at least, doubtful whether they intended to submit this matter.  We think it does not appear, with sufficient certainty, that it was submitted, and we cannot presume it.

The award is much more indefinite and uncertain than the submission.  If it be said that the latter is sufficiently certain, it seems to us that the award is insufficient to bar the plaintiff's action.  It does not expressly, perhaps not by reasonable intendment, settle the only question which was submitted.  The arbitrators do not find, that a right exists in the defendants, to flow the plaintiff's land, upon any terms.  They do not find a subsisting right, upon the payment of a compensation.  It is only by implication, that they find the defendants have no right without making such payment.  They simply award, that *if* the defendants open and close the gates of their dam at specified periods, they shall pay annually the sums of money which are stated in the award.  The award is merely, that *if* the easement is enjoyed by the defendants, they shall pay a certain sum to the plaintiff.  We are ignorant of any principle or authority which makes such an award operative as a defence to the present suit.  We are of opinion that the award is no bar to the plaintiff's recovery; that the verdict was right upon the facts stated ; and therefore, do not advise a new trial.

In the view we have taken of the case, it becomes unnecessary to consider whether the verdict is against the evidence, (as it is claimed to be) relating to the repudiation of the award ; for whether it was repudiated or not, is wholly immaterial.  We are not, however, to be understood to admit, that the evidence is presented in such a form, as would justify us in examining it to ascertain whether it sustains the verdict.  The statute requires that a statement of the evidence, and a report of it shall be made, by the judge, to this court.  We are far from being satisfied, that this motion shews a compliance with this provision.  But for the reasons which have been stated, a critical examination of the motion with reference to this point, is waived.

In this opinion the other Judges, notwithstanding some conflicting views during the consultation, ultimately concurred.

New trial not to be granted.