VINCENZO VIOLA *v.* LIQUOR CONTROL COMMISSION

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 4—decided July 1, 1969

*Vincent J. Dowling,* for the appellant (plaintiff).

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant).

ALCORN, J. The defendant liquor control commission, after hearing, denied the plaintiff's application for a cafe permit at 84 Union Place in Hartford. The commission acted under authority of § 30-46 of the General Statutes, the material portion of which provides that "[t]he commission may, except as to a store engaged chiefly in the sale of groceries, refuse to grant permits for the sale of alcoholic liquor if it has reasonable cause to believe: . . . (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to public interest, and, in reaching a conclusion in this respect, the commission may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood . . . ." The commission stated as the reason for its action "UNSUITABILITY OF PLACE BECAUSE The Commission finds that the granting of a CAFE PERMIT at this location would be detrimental to public interest, because of the number of like permits and the number of all permits existent in the immediate neighborhood." The Court of Common Pleas rendered judgment dis-

missing the plaintiff's appeal from the commission's action, and the plaintiff has taken the present appeal from that judgment.

The essential facts are not in dispute. The plaintiff now holds a tavern permit at the same location. The surrounding neighborhood is commercial. There are no residential accommodations other than hotels. The premises face the railroad station, and there are three bus terminals and several light manufacturing establishments in the immediate neighborhood. Within a radius of 1500 feet from the premises there are nine other liquor outlets, one of which operates under a restaurant permit for beer only, one under a cafe permit, two under hotel permits and five under restaurant permits. The plaintiff's tavern permit constitutes the tenth liquor outlet in the area, and the total number of permit locations would be unaffected by either a grant or a denial of the plaintiff's application.

The court below considered the appeal on the record of the proceedings before the commission, and the sole question before it was whether the commission's decision was arbitrary, illegal or so unreasonable as to constitute an abuse of discretion. *Spadaro* v. *Liquor Control Commission*, 150 Conn. 68, 72, 186 A.2d 76. The burden of proof was on the plaintiff. *Balog* v. *Liquor Control Commission*, 150 Conn. 473, 475, 191 A.2d 20.

The issue presented is a narrow one. The plaintiff's position is that the commission abused its discretion in denying the application for the reason stated because the cafe permit which is sought is "like" only one other cafe permit in the area and the total number of all permits would be unaffected by the granting of his application. The defendant, on the other hand, claims that the term "like" permits,

as used in General Statutes § 30-46, refers to permits which are substantially similar rather than to permits which are identical. The similarity relied upon by the defendant hinges principally on the number of permit premises within the area which may serve all types of liquor for consumption on the premises. The cafe permit, originally created by No. 365, § 2, of the 1967 Public Acts (now General Statutes § 30-22a), allows the retail sale of alcoholic liquor to be consumed on the premises. "Alcoholic liquor" as defined by § 30-1 of the Liquor Control Act (General Statutes c. 545) includes alcohol, beer, spirits and wine. Liquor outlets operating under a hotel permit (§ 30-21) or a restaurant permit (§ 30-22) may also sell alcoholic liquor for consumption on the premises. The times during which sales may be made are the same for each of the three types of permit. Beyond these likenesses, however, the similarity between cafe, hotel and restaurant permits vanishes. See, for example, General Statutes §§ 30-1(9), (17), (23); 30-22(4); 30-22a; 30-41; 30-76; 30-93. The wide variation in permit fees and in the permissible activities makes it neither reasonable nor logical to say that cafe, restaurant and hotel permits can be said to be "like" permits.

The arguments of the parties seem to be based on the assumption that the commission stated two distinct reasons for its action, namely, (1) the number of like permits and (2) the number of all permits. We do not read the stated reason in that fashion. "Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity." *Ruppert* v. *Liquor Control Commission*, 138 Conn. 669, 674, 88 A.2d 388. In further-

ance of that regulatory power, the statute vests the commission with a liberal discretion. *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 552, 135 A.2d 595. Moreover, the exercise of that discretion must be tested in the light of the fact that the Liquor Control Act, of which § 30-46 is a part, "contains the suggestion that harm from the sale of liquor, as it relates to place or person, is a matter of special knowledge acquired, or to be acquired, by the liquor control commission". *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 560, 53 A.2d 655.

It was the duty of the commission under § 30-46 to refuse to grant this permit if it had "reasonable cause to believe . . . that the granting of a permit . . . [would be] detrimental to public interest." In reaching that conclusion, the commission was directed by the statute to consider various factors including "the number of like permits and number of all permits existent in . . . the immediate neighborhood."

The commission concluded that the granting of a cafe permit at the location would be detrimental to the public interest "because of the number of like permits *and* the number of all permits" in the neighborhood. (Emphasis supplied.) The reason given is conjunctive. The decision could be stated in another way, namely, that it would be detrimental to the public interest to have, within a radius of 1500 feet in this commercial area, two cafe permits among the ten existing liquor outlets rather than the two outlets restricted to the sale of beer as at present.

We cannot say, as a matter of law, that the commission abused the wide discretion vested in it in arriving at such a conclusion. "It was contemplated by the legislature that the commission might draw the line somewhere, and we see nothing arbitrary or

illegal in the ruling of the commission, supported as it is by the judgment of the trial court, that this was a point at which it might be drawn." *Biz* v. *Liquor Control Commission,* supra, 562.

There is no error.

In this opinion the other judges concurred.