BARBARA COREY *v.* AVCO-LYCOMING DIVISION, AVCO CORPORATION

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, JS.

Argued February 1—decided July 5, 1972

*David J. Della-Bitta,* assistant attorney general, with whom were *F. Michael Ahern,* assistant attorney general, and, on the brief, *Robert K. Killian,* attorney general, for the appellant (plaintiff).

*Warren G. Sullivan,* with whom were *Dwight F. Fanton* and *Gregory L. Thornton,* and, on the brief, *James B. Stewart,* for the appellee (defendant).

RYAN, J. This is an appeal by the named plaintiff from a judgment of the Superior Court setting aside a decision and order of a hearing tribunal of the Commission on Human Rights and Opportunities finding that the Avco-Lycoming Division, Avco Corporation, hereinafter referred to as Avco,

had discriminated against her in violation of the
Fair Employment Practices Act by terminating her
employment because of her religion. General Stat-
utes § 31-126 (a). The plaintiff has appealed to this
court.

There were only two witnesses who testified be-
fore the hearing tribunal, the plaintiff and Pasquale
Cipriano, the assistant director of industrial rela-
tions for Avco. The plaintiff printed no appendix
of evidence to her brief, as required by Practice
Book § 645. The evidence printed in the appendix
to the defendant's brief discloses the following: The
plaintiff Barbara Corey was employed by the de-
fendant Avco on September 3, 1968, as a rate clerk
and was assigned to the traffic division, department
2K. Her scheduled hours of work were from
8:15 a.m. to 5 p.m., Monday through Friday. She
had been fully informed previously of these details
during her job interview and at that time made no
objection to working those hours.

Three bargaining units at the Avco Stratford
plant represent approximately one-half of Avco's
employees and they include Local 376 of the Inter-
national Union, United Automobile, Aerospace and
Agricultural Implement Workers of America,
U.A.W., of which Mrs. Corey was a member. There
is a collective bargaining agreement between Avco
and Local 376 dated August 4, 1967, which was in
effect during the period of time when Mrs. Corey
was employed by Avco.

The plaintiff worked from September, 1968, until
November, 1968. During this period she had one
day off, with pay, for personal reasons. When an
employee takes an occasional day off for personal
reasons the company does not always know whether
the time off is taken for a religious observance. Late

in October, 1968, the plaintiff went to see Mr. Marfiak, the manager of the traffic department, told him she was a Seventh Day Adventist and asked permission to leave work before sundown on certain Fridays in order to observe the Sabbath. She testified that Seventh Day Adventists celebrate a Sabbath which begins at sundown on Friday and continues until sundown on Saturday and that it was her own interpretation of her religious obligations which required her to leave work early on Fridays. Marfiak informed her that she could not have the time off as requested. Subsequent to this interview she was advised to see Mrs. Stoddard concerning a job on an earlier shift. Mrs. Stoddard attempted to find a comparable job for her with earlier hours. The plaintiff was in the hospital from November 4 to November 9, 1968, and returned to work on November 10, 1968. On Friday, November 15, 1968, the sun set before 5 p.m. and she again informed Marfiak of the necessity of leaving the plant about 4:45 p.m. She showed him a calendar stating the exact time of sundown in Massachusetts to indicate the times at which she wished to leave the plant each Friday for the next sixteen weeks. He again denied her request. In spite of her failure to obtain permission, the plaintiff left work about thirty-five minutes early on Friday, November 15, 1968. On Monday, November 18, at a meeting with Marfiak, two union stewards and two other men, she was terminated from her employment for insubordination. Following the termination of her employment she filed a grievance pursuant to the terms of the collective bargaining agreement charging that her discharge violated the contract because it was discriminatory on religious grounds. She also filed a complaint with the Commission on

Human Rights and Opportunities alleging that the same conduct violated § 31-126 (a) of the General Statutes.

The grievance was processed through the various steps and through arbitration by Local 376, which was certified by the National Labor Relations Board to be the collective bargaining agent for the members of the collective bargaining unit to which the plaintiff belonged. Pursuant to the provisions of article IV of the collective bargaining agreement, a hearing was held before the board of arbitration on the plaintiff's grievance on March 27, 1969, at which hearing the plaintiff testified as a witness in her own behalf. Throughout the grievance proceedings the plaintiff was represented by a union representative of Local 376. Following the hearing on March 27, 1969, the board of arbitration issued its award dated April 28, 1969, and documented as American Arbitration Case No. 12 30 0040 69. The board of arbitration denied the grievance in all respects and sustained and confirmed the action of the company in terminating the grievant's employment. The award of the arbitrators was introduced in evidence before the commission.

The hours of work in department 2K during the months of October and November, 1968, were from 8:15 a.m. until 5 p.m. The plaintiff was the only employee in department 2K assigned to the job classification of rate clerk. Since the plaintiff was still in the midst of the training process up to the termination of her employment with Avco and she still required and received considerable supervision, she was not permitted to adjust her scheduled hours of work. Because she was the only rate clerk in the department, she received different substantive training than any other employee in her department. The

plaintiff's training was dependent on a rate analyst for supervision but the analyst was not always available, at all times during the day, because he had other responsibilities to perform. No one was working in department 2K prior to 8:15 a.m. The need for the plaintiff to be present until 5 p.m. every day was the same need that existed for every other employee to be available in the event that anything had to be done. During the plaintiff's absence from department 2K, her work and duties were performed by a rate analyst who was in a higher job classification and was paid more than the plaintiff.

Since the basic claim of the plaintiff was that her employment was terminated because of discrimination against her because of her religion, evidence was offered as to the treatment of people of other religious faiths who were employees of the company. Those Jewish employees of Avco who were members of the bargaining unit were not generally permitted to take time off to observe Rosh Hashanah because the bargaining agreement sets forth only specific holidays. Some of these employees may be given the time off without pay, but this is a decision within the discretion of individual departmental supervisors. Yom Kippur is not a listed holiday for employees in the bargaining unit. From time to time employees of various religious beliefs requested time off for religious holidays and Avco acceded to certain of such requests on occasion, but the requests were very irregular and not for the same day for a period of sixteen weeks.

On March 19, 1969, Avco wrote to the plaintiff reaffirming a job offer which it claimed previously had been made to her by Mrs. Stoddard in the plant. The job referred to in the letter was for a crib control clerk in department 19S. In contrast to the

plaintiff's earlier testimony that Mrs. Stoddard told her there was no job available on an earlier shift, she admitted to testifying before the board of arbitration that Mrs. Stoddard had advised her that there was shop work available on an earlier shift. The plaintiff showed no interest in the position offered to her.

On May 6, 1969, the hearing tribunal of the commission reached a decision in the plaintiff's favor. They concluded that there was, in fact, discrimination in that the plaintiff was deprived of her employment because of her religion and that no "bona fide occupational qualifications or need" were shown and ordered the company to reinstate her with back pay and allow her to cease work at sundown on Fridays. On appeal to the Superior Court, the defendant urged as it had before the tribunal that the award of the board of arbitration was res judicata and that the hearing tribunal was thereby precluded from directing or ordering the defendant to act in contravention of the arbitration award; that the findings and conclusions of the hearing tribunal were not supported by substantial and competent evidence, and that the tribunal erred in concluding that the defendant had discriminated against the plaintiff because of her religion. The trial court concluded that the findings and conclusions of the board of arbitration constitute collateral estoppel by judgment binding the hearing tribunal and precluding contrary and inconsistent findings on identical issues; that the plaintiff by reason of her election of remedies was foreclosed from seeking a more favorable result than that rendered by the board of arbitration; and that the record of evidence before the tribunal indicates that the conclusions of fact were not supported by substantial evidence. In her

appeal to this court the plaintiff assigns error in these conclusions of the trial court.

Article XIII, § 3, of the agreement between Avco and the union provides as follows: "Neither the Company nor the Union shall discriminate against any employee on account of race, creed, sex or national origin." The board of arbitration after a full hearing reached the conclusion that there was no discrimination against the plaintiff because of her religion. The language of the arbitrators is significant. "To put it another way, since the Company does not intend to accommodate itself to individual schedules, as indeed it could not if it desires to continue to maintain an efficient industrial operation, it cannot accede to grievant's request in this instance without itself being in violation of the . . . Collective Bargaining Agreement proviso. The grievant has no right or entitlement to request the Company so to act." The arbitration award was confirmed by order of the Superior Court on June 5, 1969, and no appeal was ever taken from that judgment. "The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all provisions of law relating to, a judgment or decree in a civil action; and it may be enforced as if it had been rendered in a civil action in the court in which it is entered." General Statutes § 52-421.

The first question to be determined is whether the decision of the board of arbitration constituted a bar or estoppel binding the hearing tribunal under the doctrine of res judicata. The doctrine of res judicata is one of rest and is enforced on the ground of public policy. *Brady* v. *Anderson*, 110 Conn. 432, 435, 148 A. 365. To prevent a multiplicity of actions, equity will enjoin further litigation of a cause of

action which has already been adjudicated. A final judgment on the merits is conclusive on the parties in an action and their privies as to the cause of action involved. If the same cause of action is again sued on, the judgment is conclusive with respect to any claims relating to the cause of action which were actually made or might have been made. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778; *Lehrman* v. *Prague,* 115 Conn. 484, 490, 162 A. 15; *Scott* v. *Scott,* 83 Conn. 634, 638, 78 A. 314. Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment on the subsequent litigation of a different cause of action involving some of the issues determined in a former action between the parties. *Brockett* v. *Jensen,* 154 Conn. 328, 337, 225 A.2d 190. "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . . (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action. Restatement, Judgments § 68." *Brockett* v. *Jensen,* supra.

We have held that res judicata and collateral estoppel depend on the existence of a valid final judgment by a court of competent jurisdiction. *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 92, 20 A.2d 455; *Ruocco* v. *Logiocco,* 104 Conn. 585, 595, 134 A. 73. The question is raised as to the propriety of using the decision of an arbitration panel as a prior adjudication for the purposes of res judicata. Despite frequent statements which indicate acceptance of the proposition that the doctrine of res judicata

is not applicable where the earlier decision was made, not by a court, but by an administrative agency, or that the doctrine does not ordinarily apply to decisions of administrative tribunals, there is a wealth of reason and authority for the application of that doctrine, or a similar doctrine, to the determinations of an administrative agency in a proper case, generally where the determinations are made for a purpose similar to those of a court and in proceedings similar to judicial proceedings. In any event, the doctrine of res judicata may apply to a judgment rendered by a court on review of a decision made by an administrative body. 46 Am. Jur. 2d, Judgments, § 455.

No satisfactory reason can be assigned why an award, which the parties have expressly stipulated should be final as to the subject submitted, should not be as conclusive as a court-rendered judgment. 2 Freeman, Judgments (5th Ed.) § 636. The more recent cases also indicate that a decision of an administrative board, acting in a duly authorized judicial capacity, is a prior decision within the rule of res judicata. *United States* v. *Utah Construction & Mining Co.,* 384 U.S. 394, 421, 86 S. Ct. 1545, 16 L. Ed. 2d 642; *Tidewater Oil Co.* v. *Jackson,* 320 F.2d 157, 161 (10th Cir.). The cases also apply the doctrine to the award of an arbitration panel in bar of subsequent litigation on the same claim. *James L. Saphier Agency, Inc.* v. *Green,* 293 F.2d 769 (2d Cir.); *International Union* v. *Weatherhead Co.,* 203 F. Sup. 612, 619 (N.D. Ohio); *Livingston* v. *Shreveport-Texas League Baseball Corporation,* 128 F. Sup. 191, 202 (W.D. La.), aff'd, 228 F.2d 623 (5th Cir.); *Glens Falls Ins. Co.* v. *Garner,* 229 Ala. 39, 155 So. 533; *General Exchange Ins. Corporation* v. *Harmon,* 288 Ky. 624, 157 S.W.2d 126; *Matter*

*of Publishers Assn. (New York Stereotypers)*, 15 Misc. 2d 931, 181 N.Y.S.2d 527; *Feinstein* v. *Carl-Dress Corporation*, 156 N.Y.S.2d 636; *Inglis* v. *Trickey*, 172 Okla. 114, 45 P.2d 135; *Rueda* v. *Union Pacific R. Co.*, 180 Ore. 133, 175 P.2d 778; *Ferguson* v. *Ferguson*, 127 S.W.2d 1018, 1021 (Tex. Civ. App.). "The award . . . valid on its face . . . has the force of a judgment, and therefore becomes *res judicata* as to all matters embraced in the submission . . . between the parties." *Campbell* v. *Campbell*, 45 App. D.C. 142, 154A, cert. denied, 242 U.S. 642, 37 S. Ct. 114, 61 L. Ed. 542. "An arbitration award is accorded the benefits of the doctrine of res judicata in much the same manner as the judgment of a court." 6 C.J.S., Arbitration and Award, § 97.

The plaintiff also urges that the doctrine of res judicata is inapplicable in the case before us because there was no identity of issues or parties before the board of arbitration and the hearing tribunal of the commission. The plaintiff Barbara Corey was a grievant before the board of arbitration and the complainant and the plaintiff in the matter before the hearing tribunal of the Commission on Human Rights and Opportunities. Under the terms of the contract, she elected to have the union present her grievance to management.[1] In such a situation the union acts in her behalf as her statutory agent. *Vaca* v. *Sipes*, 386 U.S. 171, 194, 87 S. Ct. 903, 17 L. Ed. 2d 842; *Republic Steel Corporation* v. *Maddox*, 379 U.S. 650, 655, 85 S. Ct. 614, 13 L. Ed. 2d 580. While the arbitration was conducted by the union, there can be no question that privity existed between her and the

[1] Under § 9 (a) of the National Labor Relations Act; 49 Stat. 453, 29 U.S.C. § 159 (a); an individual employee who is a member of a bargaining unit covered by a collective contract retains the right individually to present his grievance to management. The contract involved in the case at bar affirms that principle.

union. There was, therefore, an identity of parties. The question basic to the determination of the board of arbitration and the hearing tribunal was the same: Did AVCO discriminate against the plaintiff in her employment because of her religious creed? The question of fact essential to the judgment was actually litigated and determined by a valid and final judgment and under the doctrine of collateral estoppel this was conclusive on the hearing tribunal. "The rules of res judicata create substantive rights and are not merely procedural. They exist in order to limit a person to one opportunity to settle a dispute between himself and another." Restatement, Judgments § 80, comment (b), p. 362.

The decision in *Dewey* v. *Reynolds Metals Co.,* 429 F.2d 324 (6th Cir.), rehearing denied, affirmed per curiam by an equally divided court, 402 U.S. 932, 91 S. Ct. 2186, 29 L. Ed. 2d 267, is directly in point with the present case. Dewey alleged that he had been unlawfully discharged from his employment because of his religious beliefs. He filed a grievance under his collective bargaining agreement claiming violation of the antidiscrimination clause therein. The matter went to arbitration and the issues were decided against him. He also filed charges under title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. He brought an action under the Civil Rights Act alleging that he had been unlawfully discharged because of his religious beliefs. Since the arbitrators had decided the issues against him the court held that this precluded a relitigation of the same claim on the ground of collateral estoppel. "The arbitrator had jurisdiction to determine the grievances. The arbitration involved an interpretation of the collective bargaining agreement with respect to Dewey's clams that he had

been laid off and discharged because of his religious beliefs. In arbitration proceedings, frequently questions of law and fact are resolved by the arbitrator. Where the grievances are based on an alleged civil rights violation, and the parties consent to arbitration by a mutually agreeable arbitrator, in our judgment the arbitrator has a right to finally determine them. Any other construction would bring about the result present in the instant case, namely, that the employer, but not the employee, is bound by the arbitration." *Dewey* v. *Reynolds Metals Co.,* supra, 332.

The plaintiff would have us ignore the *Dewey* rule and follow the fifth circuit's decision in *Hutchings* v. *United States Industries, Inc.,* 428 F.2d 303 (5th Cir.). We note, however, that the collective bargaining agreement in the *Hutchings* case did not contain an antidiscrimination clause. This aside, the thrust of the *Hutchings* case is that discrimination in employment is a public wrong and that the individual plaintiff sues to vindicate a public right. We too believe and affirm that job discrimination is a public wrong, but we believe that the violation of the public right is remedied and the public interest is served by affording the plaintiff the opportunity to have the question determined by a fair and impartial tribunal which can grant an adequate remedy. It is not in the public interest, however, to condone a procedure which would permit a plaintiff to litigate the same question over and over again, encumbering the mechanisms our society has established to resolve disputes and subjecting the defendant to incessant harassment. Litigation must end at some point. The rules of res judicata are designed to accomplish this important public policy. See "Developments in the Law—Employment Discrimina-

tion and Title VII of the Civil Rights Act of 1964," 84 Harv. L. Rev. 1109, 1225.

The plaintiff also assigns error in the court's conclusion that the hearing tribunal's findings are not supported by the evidence before it. "The findings of the hearing tribunal as to the facts, if supported by substantial and competent evidence, shall be conclusive." General Statutes § 31-128 (b). Substantial and competent evidence is that which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. *New Canaan* v. *Connecticut State Board of Labor Relations,* 160 Conn. 285, 289, 278 A.2d 761; *L. Suzio Construction Co.* v. *Connecticut State Board of Labor Relations,* 148 Conn. 135, 138, 168 A.2d 553; *Hoyt-Bedford Co.* v. *Connecticut State Board of Labor Relations,* 147 Conn. 142, 147, 157 A.2d 762; *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439; see *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366.

A careful analysis of the evidence before the hearing tribunal, previously recited in this opinion, serves to confirm the conclusion of the trial court that the findings of the tribunal were not supported by substantial and competent evidence. The fundamental error of the plaintiff and the hearing tribunal is that they equate religious discrimination with failure to accommodate. These two concepts are entirely different. The employer ought not to be forced to accommodate each of the varying beliefs and practices of his employees. *Dewey* v. *Reynolds Metals Co.,* 429 F.2d 324, 335 (6th Cir.), affirmed by

an equally divided court, 402 U.S. 689, 91 S. Ct. 2186, 29 L. Ed. 2d 267. We agree with the board of arbitrators that it would be economically impossible for the defendant to accommodate itself to individual schedules of employees and continue to maintain a successful and efficient industrial operation. It was not the intention of the General Assembly that employers or labor organizations should be harassed with respect to claims not involving discrimination. Cf. *Dewey* v. *Reynolds Metals Co.,* supra.

The remaining assignments of error do not require discussion.

There is no error.

In this opinion House, C. J., Shapiro and Fitz-Gerald, Js., concurred.

Loiselle, J. (concurring). I agree with the second ground of decision—that there is not sufficient evidence to support the conclusion of the Commission on Human Rights and Opportunities—and believe the disposition of this case should be made solely on that ground.

Preliminarily, I must question whether the majority opinion's authority for holding that parties are bound by the decision of an official administrative agency of the government is authority for holding them bound in all respects by an arbitrator's award, in view of the dictum of *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 92, 20 A.2d 455, and the very limited scope of judicial review to which awards are subject; General Statutes § 52-418, *Gary Excavating Co.* v. *North Haven,* 160 Conn. 411, 414, 279 A.2d 543, and see *United Steelworkers Trilogy,* 363 U.S. 564, 568, 574, 593, 598, 80 S. Ct. 1343, 1347, 1358, 4 L. Ed. 2d 1403, 1409, 1424; whether the fact

that Mrs. Corey lodged a grievance makes her a
party to the arbitration proceeding which eventually
determined it, in view of the particular contract in
this case and *McCaffrey* v. *United Aircraft Corpo-
ration,* 147 Conn. 139, 141–42, 157 A.2d 920, cert.
denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736;
whether administrative agencies are to be over-
turned when they do not follow the sometime-applied
judicial policy of collateral estoppel, in view of cases
such as *Waterbury* v. *Commission on Human Rights
& Opportunities,* 160 Conn. 226, 230, 278 A.2d 771,
*Viola* v. *Liquor Control Commission,* 158 Conn. 359,
361, 260 A.2d 585, and *Zawisza* v. *Quality Name
Plate, Inc.,* 149 Conn. 115, 118–20, 176 A.2d 578,
which traditionally limit the basis for our review to
whether they have acted illegally, arbitrarily and in
abuse of discretion or without foundation in sub-
stantial and competent evidence.

The legislative mandate which vests the Commis-
sion on Human Rights and Opportunities with the
power to use the authority of law and the resources
of government to eliminate invidious discrimination
in employment is more compelling than the con-
siderations in favor of foreclosing the action of the
commission on the theory of collateral estoppel.
Under these circumstances, the doctrine of estoppel
should not be applied. I do not believe, moreover,
that there is an identity of issues.

There is no dispute that there must be an identity
of issues actually litigated before the arbitrators
and the commission before the doctrine of collateral
estoppel can be applied. For the commission to have
determined the same question as the arbitration
panel, discrimination would have to mean the same
thing to both bodies. The majority implicitly finds
such concurrence of standard without comparing the

construction of the statutory provision, under which the commission acted, with the construction of the contractual provision, under which the arbitration panel acted.

The award cites the sources which the arbitrators considered in reaching their decision, including federal standards, and omits any reference to the state statute, under which the commission ruled, either as extra-contractual rights of the employee or as a guide to interpreting the contract. Because the award does not purport to deal with the statutory rights of the employee, foreclosing the employee from asserting his statutory rights to the commission may deny him the right to be heard with respect to them by either the commission or the arbitrators. Where it does not appear with reasonable certainty, from a submission and award, that rights were submitted for determination, there should be no bar. *Hopson* v. *Doolittle,* 13 Conn. 236, 240.

General principles of arbitration make it indisputable that the arbitrators were concerned with the contract and not with the statute. An agreement for the submission of issues to arbitration constitutes "the charter of the entire arbitration proceedings and defines and limits the issues to be decided by the arbitrators." *Gores* v. *Rosenthal,* 150 Conn. 554, 557, 192 A.2d 210. If, as in this case, the contract does not require the arbitrators to apply legal standards, "arbitrators are not required to decide according to law. . . . '[They] are not bound to follow strict rules of law, unless it be made a condition of the submission.'" *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595–96, 96 A.2d 209; see *United Steelworkers* v. *Enterprise Corporation,* 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424.

Arbitrators commonly apply contract standards of discrimination rather than legal standards or make no reference to the applicable legal standards. See, for example, awards collected by Edwards & Kaplan in "Religious Discrimination and the Role of Arbitration under Title VII," 69 Mich. L. Rev. 599, 645 n.225. If arbitrators are not necessarily considering legal rights when they construe contracts governing the same subject area, this court should be reluctant to consider these legal rights to be concluded by such arbitration. See Mr. Justice Harlan's concurring opinion in *United States Bulk Carriers* v. *Arguelles,* 400 U.S. 351, 361–62, 91 S. Ct. 409, 27 L. Ed. 2d 456, in which he discusses the comprehensiveness of arbitration.

Even if the language of the statute and contract were the same, their construction may be different because the rules for their interpretation differ dramatically. In construing contracts, arbitrators look, for example, to industrial harmony and the long-standing practices of the industry and the shops covered by the contract—the common law of the shop. *United Steelworkers* v. *Warrior & Gulf Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; see *Local 1078* v. *Anaconda American Brass Co.,* 149 Conn. 687, 691–92, 183 A.2d 623 (*Baldwin, C. J.,* concurring). In construing statutes, the courts look, for example, to expressed purposes and legislative history and accord great deference to the construction given the statute by the agency charged with its enforcement. *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 433, 91 S. Ct. 849, 28 L. Ed. 2d 158; *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 561, 59 A.2d 290. When two bases for interpretation diverge, it is hard to conclude that conclusions which flow from them necessarily converge. Perhaps for

this reason, several United States Circuit Courts of Appeals share the view that the doctrine of collateral estoppel should not necessarily be applied to bar a determination of discrimination under a fair employment statute.[1]

In statutes of equal dignity, the legislature has conferred the power to construe contracts on arbitrators; General Statutes §§ 52-408—52-421, 31-91—31-100; and the power to determine unfair employment practices under statutes on the commission; General Statutes §§ 31-122—31-128. That this may result in overlapping remedies should not void either so long as no one is unjustly enriched. Experience under federal labor acts suggests that the Sixth Circuit Court may have been overcautious in its ap-

---

[1] *Voutsis* v. *Union Carbide Corporation*, 452 F.2d 889, 894 (2d Cir.), cert. denied, 406 U.S. 918, 92 S. Ct. 1768, 32 L. Ed. 2d 116 (title VII proceeding in spite of prior settlement by a state Human Rights Commission); *Taylor* v. *Armco Steel Corporation*, 429 F.2d 498, 499 (5th Cir.) (consideration in spite of judicial determination prior to Civil Rights Act); *Hutchings* v. *United States Industries, Inc.*, 428 F.2d 303 (5th Cir.) (prior arbitration award); *Fekete* v. *United States Steel Corporation*, 424 F.2d 331, 333 n.3 (3d Cir.) (suit for injunctive relief not mooted by arbitration award); *Norman* v. *Missouri Pacific R.*, 414 F.2d 73, 84 (8th Cir.) (prior judicial determination under Railway Labor Act); see also *Tipler* v. *E. I. DuPont deNemours & Co.*, 443 F.2d 125, 129 (6th Cir.) (consideration of title VII claim in spite of prior determination on discrimination by N.L.R.B.: "This is because the purposes, requirements, perspective and configuration of different statutes ordinarily vary"); see, e.g., *Pacific Seafarers, Inc.* v. *Pacific Far East Line, Inc.*, 404 F.2d 804 (D.C. Cir.), cert. denied, 393 U.S. 1093, 89 S. Ct. 872, 21 L. Ed. 2d 784; *N.L.R.B.* v. *Stafford Trucking, Inc.*, 371 F.2d 244 (7th Cir.); *Title* v. *Immigration & Naturalization Service*, 322 F.2d 21, 25 (9th Cir.). Even the Sixth Circuit Court's *Dewey* v. *Reynolds Metals Co.*, 429 F.2d 324, 332, affirmed by an equally divided court, 402 U.S. 689, 91 S. Ct. 2186, 29 L. Ed. 2d 267, is limited so as not to apply to the facts of this case. *Newman* v. *Avco Corporation—Aerospace Structures Division*, 451 F.2d 743, 748 (6th Cir.); *Spann* v. *Kaywood Division, Joanna Western Mills Co.*, 446 F.2d 120, 122 (6th Cir.).

prehension that allowing an agency determination of statutory rights to upset an arbitrator's determination of contract rights would be the death knell of arbitration. See *Dewey* v. *Reynolds Metals Co.,* 429 F.2d 324 (6th Cir.), affirmed by an equally divided court, 402 U.S. 689, 91 S. Ct. 2186, 29 L. Ed. 2d 267. The National Labor Relations Board has precisely that power, which it has sometimes exercised with respect to unfair labor practices, and arbitration has not disappeared from that area.

If we are to say that an employee cannot pursue his statutory rights when the contract under which he works covers the same subject matter, we must face the fact that we are construing the statute as not applying to the vast number of union employees, like the complainant in this case, whose contracts require that grievance procedures be the exclusive employee remedy, and who may be bound to exhaust these remedies before turning elsewhere. See *Glover* v. *St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 89 S. Ct. 548, 21 L. Ed. 2d 519; *Vaca* v. *Sipes,* 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842; *Republic Steel Corporation* v. *Maddox,* 379 U.S. 650, 85 S. Ct. 614, 13 L. Ed. 2d 580. Even in the absence of such a requirement to exhaust contract remedies; see *United States Bulk Carriers* v. *Arguelles,* 400 U.S. 351, 91 S. Ct. 409, 27 L. Ed. 2d 456, *Culpepper* v. *Reynolds Metals Co.,* 421 F.2d 888 (5th Cir.); it is only reasonable to infer that the legislature understood that the natural reaction of an employee faced with a grievance would be to complain to his union representative and that the legislature did not intend that such an act, perhaps made without advice of counsel and while unaware of alternatives, should eliminate the employee from the protection of the statute by estoppel.

It may well be that Connecticut's Fair Employment Practices Act takes the view that invidious discrimination by its very nature is a public wrong. That view is buttressed by the fact that the act did not simply create civil liability for discrimination, it set up a commission to investigate a complaint of discrimination, with the power to compel testimony and the production of records and grant immunity from prosecution, provided for one of its commissioners or investigators to attempt conciliation, directed the attorney general to argue the case against the employer, and provided remedies which may be substantially broader than those available to an arbitrator under a contract. *Carey* v. *General Electric Co.,* 315 F.2d 499, 510 (2d Cir.), cert. denied, 377 U.S. 908, 84 S. Ct. 1162, 12 L. Ed. 2d 179, distinguished between "the private interests advanced in the arbitral forum and the public interest advanced in the administrative forum." *N.L.R.B.* v. *Marine Workers,* 391 U.S. 418, 425, 88 S. Ct. 1717, 20 L. Ed. 2d 706, noted that enacted legislation in an area otherwise a matter of private concern may bring it into the "public domain."

The essential question is whether an arbitration proceeding should deprive the commission of the power conferred by statute to act on behalf of that public interest when it receives an individual's complaint. See *Newman* v. *Avco Corporation–Aerospace Structures Division,* 451 F.2d 743, 746 (6th Cir.). Although through dicta and in a different context, Chief Judge Lehman, I believe, has answered the question: "The Board is not solely a judicial body appointed to adjudicate impartially controversies between employers and employees. The Board is a public agency acting in the public interest; the instrument created by the Legislature to assure to

the people of the State protection from the 'unfair labor practices' described in the statute. . . . An order of the Board commanding that an employer shall cease and desist from such unfair labor practices vindicates a public right to protection against conduct which the Legislature has found is inimical to the welfare of the People of the State. No agreement of the employee and the employer and no litigation between them for the vindication of their private rights can deprive the public of its right to protection against labor practices which the Legislature has forbidden. Doubtless, as the Appellate Division pointed out in its opinion, the court, in making its determination in the injunction suit, gave consideration to the public interest but the People of the State had no opportunity in that action to contest the issue whether the Employer has been guilty of the 'unfair labor practices' described in the complaint of the Labor Relations Board. *A determination of the issues in an action between private parties cannot bar a contest to vindicate the public interest, as provided in the statute* [emphasis supplied], just as a judgment in civil litigation between private parties does not bar a contest of the same issues by the State in a criminal action. . . . No principle of *'res judicata'* or of 'estoppel' and no public policy precludes an investigation of the facts by the Labor Board in the public interest or bars the Board from making a valid order commanding the Employer to 'cease and desist' from acts which upon such investigation appear to be unlawful and which constitute 'a continuing means of thwarting the policy of the Act.'" *Matter of New York State Labor Relations Board (Holland Laundry, Inc.)*, 294 N.Y. 480, 63 N.E.2d 68, rehearing denied, 295 N.Y. 568, 64 N.E.2d 278.