[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal pursuant to Connecticut General Statutes § 4-183c from a decision of the Liquor Control Commission denying the plaintiffs a grocery store permit and revoking the plaintiffs' provisional permit previously granted. The relevant facts are as follows. The defendant, Liquor Control Commission, exists pursuant to § 30-2 of the Connecticut General Statutes and acts as a division of the Department of Consumer Protection pursuant to § 30-6 of the Connecticut General Statutes. The Commissioner of the Department of Consumer Protection is a member of the Liquor Control Commission pursuant to § 30-2 of the Connecticut General Statutes. The Department of Consumer Protection acting by its Liquor Control Commission has the authority to issue permits for the sale of beer pursuant to §30-14 of the Connecticut General Statutes. Among the permits authorized to be issued by the said defendants, is a grocery store permit pursuant to § 30-20 of the Connecticut General Statutes. The plaintiff, Kevin Paige, is the applicant for a grocery store beer permit and the plaintiff, Paige Enterprises, Inc., is the proposed backer of said permit. On or about March 24, 1998, the plaintiffs applied to the defendants for a grocery store beer permit. Subsequent to such application, the plaintiffs were granted a provisional grocery store permit to sell beer from their convenience store located at 51 Padanaram Road in Danbury, Connecticut. Subsequent to the filing of the application and the issuance of the provisional permit, the defendants caused an investigation to be held on the qualifications of the plaintiffs to receive the permit as applied for. On or about February 11, 1999, the defendants held a formal administrative hearing wherein CT Page 15538 the issue to be determined was whether or not the proposed permit premises met the requirements necessary to qualify as a grocery store pursuant to the definition of same contained in § 30-20
(c) of the Connecticut General Statutes. On or about March 4, 1999, the defendants issued a memorandum of decision denying the grocery store beer permit to the plaintiffs and revoking the provisional permit previously granted to said plaintiffs. The plaintiffs' claimed that they were aggrieved by the aforesaid decision of the defendants denying their application and in revoking their provisional permit.
The plaintiffs further claimed that the defendants' decision denying their application was illegal, arbitrary and was an abuse of their discretion and claimed, as support, that (a) that the plaintiffs were in compliance with all the terms and conditions of the Connecticut General Statutes which apply to a grocery store beer permit; (b) that the decision of the defendants violates both constitutional and statutory provisions pertaining to the issuance of said licenses; (c) that the decision of the defendants was in excess of the statutory authority of the agency; (d) that the decision of the defendants was clearly erroneous in view of the evidence on the record before it; (e) that the decision of the defendants was arbitrary and capricious and was an unwarranted exercise of discretion; (f) that the decision of the defendants evidenced clear prejudice against the plaintiffs; and (g) that the decision of the defendants was made upon an "unwritten" regulation of the defendants.
As indicated, a hearing was held before the defendants on February 11, 1999. That hearing resulted in a memorandum of decision dated March 4, 1999 denying the plaintiffs the permit requested and revoking the provisional permit previously granted.
The first hearing before the court was held on October 4, 1999. A second hearing was scheduled and held on November 1, 1999 to allow the parties to present evidence on the issue of aggrievement and to further discuss issues presented to the court as a result of the first hearing.
It is fundamental that in order to have standing to bring an administrative appeal a person must be aggrieved. ConnecticutBusiness and Industries Association, Inc. v. CHHC, 214 Conn. 726,729 (1990). Connecticut General Statutes § 30-60 establishes the categories of plaintiffs entitled to statutorily appeal department action. Hartford Distributors v. Liquor ControlCT Page 15539Commission, 177 Conn. 616, 620 (1979). Connecticut General Statutes § 30-60 provides in part: "Any applicant for a permit or for the renewal of a permit for the manufacture or sale of alcoholic liquor whose application is refused or any permittee whose permit is revoked or suspended by the Department of Consumer Protection . . . may appeal therefrom in accordance with section 4-183." Because the plaintiffs' application was refused and denied, and their temporary permit was revoked, the court finds that the plaintiffs are statutorily aggrieved with standing to bring this action.
Connecticut General Statutes § 4-183 sets forth the requirements of an aggrieved party taking an appeal from a final decision in a contested case. No claim was made by the defendants that said provisions were not complied with, and the court does find that the requirements set forth in that section have been complied with. As a result, this court does find that this appeal is both timely filed and served.
Of course, a trial court is not at liberty to retry the case.All Brand Importers, Inc. v. Department of Liquor Control,213 Conn. 184, 191-92 (1989). The question to be decided is whether the record before the commission supports the action taken. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Legal conclusions reached by the agency must stand therefore if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. Id., 192.
It is axiomatic that the burden of proof to demonstrate that the defendants acted improperly is upon the plaintiff. Viola v.Liquor Control Commission, 158 Conn. 359, 361 (1969). Two primary issues presented in the appeal were as follows: (a) whether the plaintiffs satisfied the defendants' requirements, specifically with regard to the nine tier breakdown; and (b) whether the plaintiffs were treated differently, inconsistently, unfairly or with some bias by the defendants in terms of the treatment of this application. The court is not satisfied that the record supports a finding on either of these issues.
With regard to the first issue presented, that of whether the plaintiffs satisfied the nine tier breakdown requirement of the defendants, it should be noted that at the first hearing before CT Page 15540 the court on October 4, 1999, the parties differed markedly in their representations to the court as to what percentage of products were sold by the plaintiffs as grocery items versus other items in the nine tier breakdown. The plaintiffs represented that the percentage of grocery items versus non-grocery items was approximately 44 percent, whereas the defendants represented that percentage to be in the range of 15 percent. (See Transcript, October 4, 1999, pp. 41-50.) It became clear to the court that the parties were using different standards to qualify what particular items went into each category of products representing the nine tier breakdown. One of the primary reasons for scheduling the second hearing before the court on November 1, 1999, was to clarify the methods of reporting in the nine tier breakdown and provide the court with sufficient reason or explanation for the significant discrepancy in the percentages reported by each party in said breakdown. Unfortunately, the second hearing did not result in any facts that provided the court with a sufficient basis to determine whether the standards used by either the plaintiffs or the defendants were appropriate and consistent with the "rules that had been established by the defendants and applied consistently for the last twenty years." (See representations of defendants' attorney at p. 23, transcript of October 4, 1999 hearing.) A review of the transcript of the hearing before the defendants on February 11, 1999, does not satisfy the court that the issue of the wide divergence in figures was adequately addressed or resolved at that level. This issue becomes all the more relevant since we are not addressing issues of whether the applicants' volume, in a situation such as this, is large or small, but rather whether the percentages of items sold fall within the categories as established by the defendants. If the defendants claim that an applicant is placing items in a category that is not consistent with the requirements as previously established and uniformly applied, that finding should be made on the record so as to provide a proper basis for review by the court. Once again, that has not been done in this case, and the court finds itself unable to determine from the record whether the percentages used by the plaintiffs were accurate or inaccurate and the basis for that finding.
Of equal concern to the court is the issue of whether the application of the plaintiffs was treated differently, inconsistently, unfairly or with some bias by the defendants. The certified transcript of the hearing before the defendants on February 11, 1999 reflects a number of instances where the CT Page 15541 applicants' store was compared to similar stores in the greater Danbury area that had received grocery/beer permits, in particular, 7-Eleven stores. While under examination, defendants' agent, D.J. Driffin, gave the following testimony:
 Q. I'm not trying to cast stones at any particular brand, but take a 7-Eleven, since everybody thinks of 7-Eleven as a convenience store.
You're familiar with the 7-Elevens in the Danbury area?
A. A couple.
 Q. If you had to say, does Dairytown carry a similar line of product to the 7-Eleven? Would you say that it's relatively similar?
A. Um. Yes. Yes.
 Q. The only difference is 7-Eleven, some of them do actually prepare food.
A. Yes.
Q. And Dairytown doesn't.
 A. Right. They have sandwiches, hot dogs, and things like that.
(Transcript, p. 18.)
Further testimony reflected the following:
 Q. And have you been able to determine whether other convenience stores in Danbury sell beer?
 A. Yes. There are a number of convenience stores that sell beer.
Q. Is it common or uncommon in the industry?
 A. I would say it is more common than uncommon, other than stores that are in proximities that bar them from having a beer permit — a church, school area. CT Page 15542
 Q. So if you factor those out and looked at the convenience stores that are not statutorily precluded somehow or regulatorily precluded, most of them do sell beer?
A. Yes, they do.
 Q. And they also sell cigarettes and the other items that you do?
A. Yes, they do.
(Transcript p. 41.)
Further, the plaintiff testified as to similar stores who sell beer at retail in the greater Danbury area, as follows:
BY MR. MARCUS:
 Q. Mr. Paige, are you familiar with other stores in the Danbury area who sell beer at retail?
A. I am aware of other stores. Yes.
Q. Are you familiar with them generally, their layouts?
 A. Yes. As a general layout, the example that I would use is the 7-Eleven location on Mill Plain Road in Danbury.
(Transcript, p. 61.)
In argument before the court on October 4, 1999, Attorney Marcus raised the issue once again in response to the court's questions as follows:
 THE COURT: Attorney Marcus, are you arguing that — that the Department should not have a standard, a formula, for determining the eligibility, the appropriateness of applicants?
 MR. MARCUS: They should. But they have to apply it fairly. And if they're going to be a slave to one method, it's gotta be established by some legislative function, which they tried to do and it was rejected.
(Transcript, p. 30.) CT Page 15543
Further argument by Attorney Marcus was as follows:
 That's not really our position that somehow the Department made a mistake by granting a 7-Eleven somewhere a permit. But what I'm suggesting is that the operations — to suggest that Dairytown isn't a convenience store. It is a convenience store.
 And to suggest that a convenience store really isn't a grocery store, well, that's not the case because all the other grocery — convenience stores around here qualify.
(Transcript, p. 33.)
What is presented to the court in this appeal is a confusing series of representations by the parties as to what the facts are, how they should be applied to satisfy the "Nine Tier Breakdown" rule established by the defendants and a substantial issue of why this permit was not granted despite the fact that admittedly similar stores in the Danbury area have been granted grocery/beer permits while this application was denied.
The defendants have the right, and indeed it is their duty, to provide a standard by which an applicant will have a clear understanding of what will be required of it to receive a permit and be secure in the knowledge that if it meets that standard it will not be treated differently than other applicants who have previously been granted permits. Despite the representations of the defendants' attorney, that rules had been established and consistently applied for the last twenty years, the record is devoid of the facts necessary to allow the court to make such findings or to determine in what if any way the plaintiffs have failed to comply with those rules.
As a result, this court does hereby sustain the appeal and does hereby remand the case to the defendants for the purpose of creating a sufficient record for the court to address the above issues.
Resha, J.