[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is an appeal from a decision by the Department of Social Services[1] on November 19, 1993, allowing the appellant's name to be certified to the Internal Revenue Service (IRS) and the Connecticut Department of Administrative Services (DAS) for offsets of the appellant's state and federal income tax refunds under the authority of Section 52-362(e) of the Connecticut General Statutes.
FACTS
On March 9, 1992, after a paternity trial before a jury, the appellant was found to be the father of a child born August 6, 1986. The court found past support in the amount of $48,732.00 (i.e. support and maintenance from the date of birth of the child to the date of the decision) and made it payable at the rate of $50.00 per week until paid off, along with a current support order. At that time, in full awareness of the property owned by the appellant, the court (Norko, J.) did not affect the property of the appellant either through lien process or ordering the property sold. Neither the State of Connecticut nor the plaintiff in the paternity action requested a lien or surety to secure the orders as provided for in Section 46b-171 of the Connecticut General Statutes. However, at a later date the Department of Human Resources did place a lien on the appellant's property claiming authority under Section 52-362d(a) of the Connecticut General Statutes. On April 13, 1994, this Court held that the Commissioner of Human Resources was precluded under Section 52-362d from placing a lien on property of someone who has complied with the orders of the Court, who is not delinquent, but who owes support for the period of time which preceded the date of the court's order, but which amount the court ordered to be paid in periodic payments. Neistat v.Department of Human Resources, No. CV93-0522974 Ct. Sup. 3986 (April 13, 1994). This court held that Section 52-362d
can only be utilized when an obligor is delinquent in complying with a court order. Therefore, since the appellant has complied with all orders, and is not delinquent in his payments, a lien could not be placed on his property.
Despite compliance by the appellant, the Department CT Page 3586 of Human Resources has again tried to by pass court process and state Statutes relating to modification by certifying the appellant's name to the Internal Revenue Service (IRS) and Connecticut Department of Administrative Services (DAS) for offset of his 1993 income tax refunds. The Department claims authority for this action under Section 52-362e of the Connecticut General Statutes. The appellant appeals to this Court from a Department of Social Services decision on November 19, 1993, which determined that appellant's name had been properly certified to the IRS and the DAS, allowing for offset of his 1993 tax returns.
ISSUES
I. Does Conn. Gen. Stat. Sec. 52-362e authorize the Department of Social Services to submit an individuals name to the Internal Revenue Service (IRS) and the Connecticut Department of Administrative Services (DAS) for offsets of Federal and State income tax refunds where the individual is paying both past and current court ordered support on time and in compliance with the court order? A review of the statute and legislative history makes it clear that the answer is no.
II. Is the Department of Social Services attempt to use Conn. Gen. Stat. Sec. 52-362e to accelerate collection of support payments in advance of a court ordered payment plan, where the parent is paying past and current court ordered support on time and, in accordance with court orders, the same issue as the one decided in Neistat v.Department of Human Resources, No. CV93-0522974 Ct. Sup. 3986 (April 13, 1994)? Was the issue essential to the judgment? The answer is yes to both questions and as such, the doctrine of collateral estoppel or issue preclusion applies.
III. Was the action of the agency undertaken without any substantial justification therefore warranting the award of attorney fees and costs to the plaintiff? Yes, the action of the agency was without substantial justification, therefore both attorney fees and costs are granted to the appellant.
DISCUSSION
CT Page 3587
ISSUE I — STATUTORY INTERPRETATION
"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. v. Natural Res. Def. Council,467 U.S. 837, 842, 843 (1984).
The question before the court is whether Connecticut General Statute Section 52-362e authorize the Department of Social Services to submit an individuals name to the Internal Revenue Service (IRS) and the Connecticut Department of Administrative Services (DAS) for offsets of Federal and State income tax refunds where the individual is paying both past and current court ordered support on time and in compliance with the court order? The Department of Social Service's position is that the language of the statute and public policy allow them to use Conn. Gen. Stat. Sec. 52-362e to offset appellants federal and state income tax returns even though he is in compliance with his past and current support orders. A review of the language and design of all the statutes relating to prior support, as well as the legislative history, State and Federal, makes it very clear that the intent of the Statute is to provide additional means to collect child support from parents who are not in compliance with court ordered support, i.e. "the deadbeat parent," not a person complying with court orders.
BACKGROUND
The paternity Statute which forms the backdrop of this case as well as all statutes dealing with support by legally liable relatives both in and out of the context of divorce actions, provide that the court or family support magistrate must make orders reasonably commensurate with the financial ability of the parties. Conn. Gen. Stat. §§ 46b-82, 46b-83, 46b-84, 46b-171,46b-172, 46b 215. All of these sections of the Statute as CT Page 3588 well as others provide the criteria for imposition of orders. In addition, Conn. Gen. Stat. § 46b-215(b) provides the guidelines to be used in the collection of child support amounts, payment on arrearages and past due support. Specific findings on the record that the application of guidelines would be inequitable are necessary before there can be a deviation. In addition the court and the magistrate may modify existing orders retroactively to the date of service of the motion claiming modification because of substantial change in circumstances or deviation of 15% in guidelines. Conn. Gen. Stat. 46b-86, Conn. Gen. Stat. 46b-171, 46b-215(e).
Invariably, in most paternity cases and in hundreds of divorce and other support matters there is a retroactive component. For example, in most paternity matters there are substantial past hospital bills as a support component, and support and maintenance prior to a finding of paternity. Again, in almost every modification motion in divorce cases there is a retroactive component. Some of the obligors, particularly in paternity cases may have large retroactive obligations, not because they did anything wrong, but because they did not have medical insurance or because they were unaware of the claim of paternity.
On the divorce side this court has seen hundreds of cases involving parties who belatedly moved for a reduction in support payments that they were entitled to at an earlier date because they either held off filing a motion hoping for a new job or because they did not have the money immediately for legal counsel. Consequently, the legislature empowered the courts and magistrates to deal with the arrearage or retroactive obligation in an equitable manner based on statutory criteria. The legislature also empowered the court and magistrate to deal with the violator of court orders through comtempt [contempt] process including jail or wage execution.
If the plaintiff's contention was correct literally hundreds of people on the very day of finding paternity or the day their support was modified upward, could be faced with mortgage foreclosure under one statute and income tax refund interception under another statute without ever violating a court order and without the CT Page 3589 magistrate or court being given opportunity to follow the statutory mandate of providing a sum to be paid based upon financial ability. Of course, nothing would have presented the plaintiff in this case from seeking lien on real property in the first instance or prevented it from seeking orders related to lump sum payments. The failure of the plaintiff to do so at that time should not be remedied by its inappropriate interpretation of State statutes.
The plaintiff would have the court ignore the legislative scheme and have no distinction between "deadbeats" and persons who follow orders. An examination of the Statutory language and legislative history of Conn. Gen. Stat. 52-362e reveals the intent to deal only with those who violate court orders.
State Statutory Language
Connecticut General Statute Section 52-352e. Withholding federal income tax refunds in amount equal to support arrearage. . . ., uses the term "past-due" and "arrearage" in defining the requirements for withholding refunds of federal and state income tax. It provides in relevant part:
 (a) . . . whenever an order of the superior court or a family support magistrate for support of a minor child or children is issued, and . . . the person against whom such order was issued owes past-due support . . . the state shall submit to the Internal Revenue Service through the federal Office of Child Support Enforcement the name of such person and request the withholding from refunds of federal income taxes owed to such person of an amount equal to the past-due support, . . .
 (b) . . . whenever an order of the superior court or a family support magistrate for support of a minor child or children is issued, and . . . the person against whom such order was issued owes past-due support . . . the department of human resources shall CT Page 3590 submit to the commissioner of administrative services the name of such person and request the withholding from refunds of state income taxes owed to such person of an amount equal to the past-due support, . . .
 (c) The commissioner of social services shall adopt regulations, . . . (4) procedures for an administrative hearing for any person who is alleged to owe an arrearage and is subject to the provisions of this section. Conn. Gen. Stat. Sec. 52-362e (1995).
The Statute is clear in that it requires a court order for support and the support must be past due. Support order as defined by the legislature includes not only current support but payments on an arrearage or both. C.G.S. § 52-362a(6) and C.G.S. § 52-362f(10),[2] A fair reading of the statute would be that the arrearage which is already encompassed in the order of support must be past due in violation of a court order, before a federal tax refund can be intercepted unilaterally without a court order. A review of the legislative history further substantiates that the statute only applies to those who violate court order.
State Legislative History
Connecticut General Statutes Section 52-362d and Section 52-362e were developed as a result of the Federal Child Support Enforcement Amendment of 1984 that mandated state programs be established to collect child support from parents who were not making child support payments according to court orders. The State statutes were fashioned after Federal Regulations. The methods include forecloseable liens, Federal and State income tax offset and income withholding. Here the floor statements clearly state the intent of the act as dealing with delinquent parents and obligors who hold an arrearage. Floor statements can be used to confirm apparent meaning.Department of Revenue v. ACF Indus., Inc., 114 S.Ct 843,851 (1994).
 "It has to be a . . . case which is being monitored by the family division of Superior CT Page 3591 Court. . . . there is a record . . . that the individual is delinquent." "We would need a finding by a court of law . . ., that the obligor holds an arrearage. Mr. Diniallo, Chief of Child Support Enforcement, Joint Committee on Judiciary, SB974, 1878, 1879 (1985).
 The IRS intercept is used only if the support arrearage is in the amount of $500 or more. Subsection (b) of this section provides that to obtain the benefit of such interception, the custodial parent must have applied to child support enforcement services with the family division of superior court." Summary Raised Committee Bill 974 at 2084 (1985).
 Incentives to states who do something about collecting support payments that are in arrears. Rep. Wollenberg H.R., PA 85-548, 11746 (1985).
The terms used by those describing the statute are arrears, arrearage and delinquent, and arrearage is used in the statute. Since no definition is supplied, it is appropriate to use dictionary definitions of terms:Pittston Coal Group v. Sebben, 488 U.S. 105, 113 (1993). Black's Law Dictionary defines "Arrears, arrearages" as "Money which is overdue and unpaid;. . ." Black's Law Dictionary 109 (6th ed. 1990), and "Delinquent — As applied to a debt or claim, it means simply due and unpaid at the time appointed by law or fixed by contract;" . . . Id. at 428. The floor and committee discussions leave no doubt that the intent of the statute is to collect child support from parents who are not paying child support in accordance with court mandated child support orders.
There is nothing in the floor discussions suggesting a change in the judicial process where paternity is determined by a court. That process involves the court determining child support and providing payment schedules for current and past support. Further involvement by the court or state agency occurs only if court ordered payments are not being made or there is a change in CT Page 3592 circumstances. Clearly, there is nothing in any of the floor discussions that gives any claim to the state legislature passing different guidelines or processes than the Federal regulations.
Federal Regulations
The Federal Child Support Enforcement Regulations mandating the Connecticut statutes are very clear in defining the requirements for enforcement of support obligations through C.F.R. § 303.72 — Requests for collection of past-due support by Federal tax refund offset; and through C.F.R. § 303.102 — Collection of overdue support by State income tax refund off-set. 45 C.F.R. Ch. III (10-1-93 Ed.)
Specifically, C.F.R. § 303.72 uses the terms delinquent or delinquency in clarifying what is meant by past-due support. It provides in relevant part:
 (a) Past-due support qualifying for offset. Past-due support as defined in sec. 301.1 of this chapter qualifies for offset if:
 (1) There has been an assignment of the support rights under sec. 232.11 of this title or section 471(a)(17) of the Act to the State making the request for offset or the IV-D agency is providing services under sec. 302.33 of this chapter.
 (2) For support which has been assigned to the State under sec. 232.11 of this title or section 471(a)(17) of the Act:
 (i) The amount of the support is not less than $150;
and
 (ii) The support has been delinquent for three months or CT Page 3593 longer. . . .
 (b) Notification to OCSE of liability for past-due support. (1) A State IV-D agency shall submit a notification (or notifications) of liability for past-due support on a magnetic tape to the Office by the submittal date specified by the Office in instructions.
 (2) The notification of liability for past-due support shall contain with respect to each delinquency: . . .
 (3) The notification of liability for past-due support may contain with respect to each delinquency the taxpayer's IV-D case number and FIPS code for the local IV-D agency where the case originated. . . .
The Federal Child Support Enforcement Regulations use past-due as does the state statute in discussing support qualifying for Federal income tax offsets. The regulations define past-due under C.F.R. § 301.1 General Definitions as follows:
 . . . the amount of support determined under a court order or an order of an administrative process established under State law for support and maintenance of a child or of a child and the parent with whom the child has been living, which has not been paid. For purposes of referral for Federal income tax refund offset of support due an individual who is receiving services under sec. 302.33 of this chapter, past-due support means support owed to or on behalf of a qualified child, or a qualified child and the parent with whom the child is living if the same support order includes support for the child and the parent.
45 C.F.R. Ch. III (10-1-93 Ed.) CT Page 3594
The definition for past due clearly does not use the word delinquency in the definition, however the Federal regulations under sec. 303.72 go on to qualify the past-due support as being "delinquent for 3 months or longer" and uses the word delinquency in other parts of the statute. Using the common definitions of the word delinquent, "due and unpaid at the time appointed by law . . ." and delinquency, "[f]ailure to make payment on debts when due. State or condition of one who has failed to perform his duty or obligation.", Black's Law Dictionary 428 (6th ed. 1990), it is clear the regulation's intent is to provide a means to collect on court orders that are unpaid from parents who fail to perform their duty to support their children.
Further C.F.R. § 303.102, Collection of overdue support by State income tax refund off-set, uses "overdue" as its qualifying term for income tax offset. In relevant part:
 (a) Overdue support qualifying for offset. Overdue support qualifies for State income tax refund offset if: . . . 45 C.F.R. Ch. III (10-1-93 Ed.)
The Federal Child Support Enforcement Regulations define overdue under C.F.R. § 301.1 General Definitions as:
 Overdue support means a delinquency pursuant to an obligation determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a minor child, which is owed to or on behalf of the child, . . . 45 C.F.R. Ch. III (10-1-93 Ed.)
Since the Federal Child Support Enforcement Regulations were the basis for the Connecticut Statutes, and there is nothing in the Connecticut legislative history indicating that there was an intentional change from the Federal Regulations, it is reasonable and logical to interpret them as having the same intent. Finley v. United States,490 U.S, 545, 554 (1989). In addition Mr. Dinallo's remarks track the Federal Interpretation.
Federal Legislative History CT Page 3595
The purpose of the Federal Child Support Enforcement Regulations is to provide the means to collect child support from parents who are not paying child support in accordance with court child support orders. The Federal Legislative history clearly confirms this purpose. In the words of Rep. Rostenkowski in presenting the Federal Child Support Enforcement Regulations to the House of Representatives for a vote "improvements were needed in our child support enforcement efforts . . . . [T]he lack of compliance with court ordered child support payments is a national disgrace." 129 Cong. Rec. HR4325 at 33033. This intent is repeated as Representative after Representative reiterated the same purpose for enacting the bill.: "When we pass this important legislation later today we will be making a clear cut statement that the enforcement of child support orders is a priority of this Congress." Id. at 33039 (statement of Rep. Moore, co-author). "The failure of an overwhelming number of noncustodial parents to fulfill their legal responsibility to support their children is a national disgrace. . . . better enforcement of court ordered support awards." Id. at 33035 (statement of Rep. Snowe).
"Statutory construction, . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. . ."United Savings Assn. v. Timbers of Inwood Forest,484 U.S. 365, 371 (1988). In reviewing Conn. Gen. Stat. Sec.52-362e and the legislative history it is clear that the intent of the statute is to provide better enforcement of court ordered child support awards so that parents fulfill their legal responsibility to support their children. Enforcement is not necessary where the parent is making court ordered child support payments on time, where there is no delinquency and where the enforcement agency can seek modification through the courts.
Here the intent of the Legislature is clear. Where the intent is clear, the court as well as the agency, must give effect to the express intent of the Legislature. As such it is unnecessary to review agency discretion.Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837,845 (1984).
ISSUE II — COLLATERAL ESTOPPEL CT Page 3596
The State of Connecticut is collaterally estopped from applying Conn. Gen. Stat. Sec. 52-362e in the instant case.[3] Collateral estoppel or issue preclusion promotes judicial economy by "preventing the re-litigation of issues or claims previously resolved." Scalzo v. City ofDanbury, 224 Conn. 124, 127 (1992). It prevents the same parties from re-litigating an issue that has already been determined in a prior action. Scalzo v. City of Danbury,224 Conn. 124, 128 (1992). It is not in the public interest ". . . to condone a procedure which would permit a plaintiff to litigate the same question over and over again, encumbering the mechanisms our society has established to resolve disputes and subjecting the defendant to incessant harassment." Corey v. Avco-LycomingDivision, Avco Corp., 163 Conn. 309, 321 (1972).
In order to apply collateral estoppel the issue must be exactly the same issue litigated in the prior proceeding.Zabelle v. Coratolo, 816 F. Sup. 115, 120 (Conn. 1993). In establishing whether the issue is the same in both actions, the court must look at the facts of each case to determine if the party is attempting to re-litigate the same facts in the second proceeding. Aetna Casualty andSurety Co. v. Jones, 220 Conn. 285, 421 (1991).
This Court had already held that a lien could not be placed on the appellant's property under Conn. Gen. Stat. Sec. 52-362e unless the appellant is delinquent in his payment on a court order. Neistat v. Department of HumanResources, No. CV93-0522974 Ct. Sup. 3986 (April 13, 1994).[4] Since this Court already determined that the appellant was not delinquent, and the State is again trying to collect under a statute that requires delinquency, the State is estopped from applying this statute.
ISSUE III — ATTORNEY FEES
Connecticut General Statutes Section 4-184a and Section4-166(9) provide a statutory basis to award fees, expenses and other costs. Nothing in the language of these statutes preclude the appellant from collecting attorney fees as well as costs. Section 4-184a allows for the award of reasonable fees and expenses to certain CT Page 3597 prevailing parties in the appeal of an agency decision. Section 4-184a provides as follows:
 "In any appeal by an aggrieved person of an agency decision . . . the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken, without any substantial justification." Conn. Gen. Stat. Sec. 4-184a(b).
Person is defined as follows:
 "Person means any individual, partnership, corporation, association, governmental subdivision, agency or public or private organization of any character, but does not include the agency conducting the proceedings;. . ." Conn. Gen. Stat. Sec. 4-166(9).
Nothing in either of these statutes indicates that a pro se attorney is barred from collecting attorney fees. The appellant is an attorney acting pro se, as such the language of the statute does not preclude him from collecting attorney fees.
Although many jurisdictions, including Connecticut; have denied pro se litigants the right to collect attorney fees,[5] some courts have allowed pro se litigants who are attorneys to collect attorney fees.[6]
The State's action was undertaken without substantial justification, therefore this litigant is entitled to reasonable attorney fees under Conn. Gen. Stat. Sec. 4-184(a). Although he is an attorney acting pro se, there is no authority which indicates he should not be compensated for the value of his time acting as his attorney. Therefore, this court awards the appellant reasonable attorney fees and expenses under Conn. Gen. Stat. Sec. 4-184(a). This court holds the appellant responsible for attorney fees in the amount of $2,500 and costs of $278.40. In determining that the State's action was taken without substantial justification, the court considered the statements by the agency head when he CT Page 3598 originally proposed the legislation that the legislative was intended to cover "delinquent" obligors and now the same agency takes a different position in court.
For all of the above reasons, the appeal is sustained and the matter is remanded for actions consistent with this decision.
Barall, J.
APPENDIX A
MEMORANDUM OF DECISION
This case is an appeal from a decision of a Hearing Officer of the Connecticut Department of Resources sustaining a decision of that department to place a lien on the property of the appellant under the authority of Section 52-362d(a) of the Connecticut General Statutes.
Facts
On March 9, 1992, after a paternity trial before a jury, the appellant was found to be the father of a child born August 6, 1986. The court found past support in the amount of $48,732.00 (i.e. support and maintenance from the date of birth of the child to the date of the decision) and made it payable at the rate of $50.00 per week until paid off, along with current support orders. The judge (Norko, J.), in entering that order was fully aware of the property of the appellant, and it was the court's express intent not to affect that property either through lien process or ordering it sold. Neither the State of Connecticut nor the plaintiff in that paternity action requested a lien or surety to secure the orders as provided for in § 46b-171 of the Connecticut General Statutes. Since the decision of the court, the appellant has complied with all orders of the court and is not delinquent in his payments. Despite his compliance, the department placed a lien on the appellant's property claiming as its authority § 52-362d(a) of the Connecticut General Statutes.
Issues
CT Page 3599
Does § 52-362d(a) authorize the Commissioner of Human Resources to place of lien on property of someone who has complied with the orders of, the court, who is not delinquent, but who owes support for the period of time which preceded the date of the court's order, but which amount the court ordered to be paid in periodic payments?
The answer to that question is no. Section 52-362d
can only be utilized when an obligor is delinquent in complying with a court order. To decide otherwise would be inconsistent with the legislative history of the statute, do violence to its choice of words, render superfluous a number of its words and ignore other statutes and render nugatory a decision of the court.
Legislative History
On April 12, 1985, Commissioner James Herris, Commissioner of the Department of Resources testified before the Joint Standing Judiciary Committee Hearings in support of Senate Bill 974 which currently is § 52-362
through § 52-362h of the Connecticut General Statutes. He indicated that the Senate Bill was an act implementing the Federal Child Support Enforcement Amendment of 1984. He introduced Tony Diniallo, the Chief of Child Support Enforcement in the State of Connecticut who clearly stated that this act dealt with delinquent obligors and the ability to place a lien on property if there is a delinquency of $500.00 or more. Judiciary Standing Committee Hearings, Part 6, page 1685-2019 (1985) at page 1874 to 1877. That position is consistent with the federal act and the federal regulations promulgated to support the Federal Child Support Enforcement Act.
Section 303.103 of the Office of Child Support Enforcement Regulations provide that the
 State shall have in effect and use procedures which require that a lien will be imposed against the real and personal property of an absent parent who owes overdue support.
Overdue support as defined by § 301.1 of those regulations means delinquency pursuant to an obligation determined under a court order. 45 C.F.R. III (10-1-92 CT Page 3600 Edition).
Legislative Language
The language of the Statute itself substantiates in a number of ways that a lien may only issue when an obligor is delinquent in complying with court orders.
Section 52-362d(a) of the Connecticut General Statutes is as follows:
 Section 52-362d. Lien against property of obligor for unpaid child support. Notice of intent. Filing of certificate. Foreclosure. Information re unpaid support reported to participating consumer reporting agency. Offset for child support arrearage against money payable by state to obligor. Notification by comptroller. Hearing. Regulations.
 (a) Whenever an order of the superior court or family support magistrate for support of a minor child or children is issued and such payments have been ordered to be made to the commissioner of administrative services directly or through the support enforcement division of the superior court and the person against whom such support order was issued is in arrears in the amount of five hundred dollars or more, the child support enforcement bureau of the department of human resources may place a lien on any property, real or personal, in which such person has an interest to enforce payment of such arrearage after first providing such person with notice of intent to place such lien, and an opportunity for a hearing before a hearing officer to contest the amount of such arrearage. The lien for unpaid child support shall be secured by filing of a certificate by the commissioner of human resources in the records of the town or towns in which any such real or personal property is located describing such property. Any such lien may, at any time during which the obligor owes the amount of unpaid child support for a hearing before a hearing officer to CT Page 3601 contest the amount of such arrearage. The lien for unpaid child support shall be secured by filing of a certificate by the commissioner of human resources in the records of the town or towns in which any such real or personal property is located describing such property. Any such lien may, at any time during which the obligor owes the amount of unpaid child support secured by such lien, be foreclosed in an action brought in a court of competent jurisdiction by the commissioner of human resources if the lien is to secure a child support obligation due the state or by the person to whom the child support is due in cases not involving assistance paid by the state.
To read the statute as requested by the State so as not to require a delinquency in or violation of a court order would render a number of the statutory words in the statute as superfluous. Under the State's interpretation, all that would be required to trigger the lien in which could be foreclosed is that the court find the obligor owed $500. There would be no need for the word "order" there would be no need for the words "and such payments have been ordered to the commissioner of administrative services." The normal rule of statutory construction is that the legislature does not put in words in statute without purpose.
If you followed the State's contention that it was only concerned with a security lien and that was the purpose of the statute, then there would be no need for the last sentence of § 52-362d(a) which provides for foreclosure. Further, there would be no need for this statute at all since a security lien was always obtainable under § 46b 171 of the Connecticut General Statutes.
A plain and clear reading of § 52-362d(a) requires two conditions that must be satisfied before a foreclosable lien can be placed on property (i) an order of support to the support enforcement agency and (ii) an arrearage or delinquency of that order in the amount of $500.00 or more. Only where both conditions are satisfied can a lien be placed under § 52-362d(a). CT Page 3602 Rutkin, Connecticut Practice Series "Family Law and Practice w/Forms" Vol. 75 § 33.20.
It is the general rule that a judgment for periodic installments is not normally the subject of judgment lienLeVay v. LeVay, 17 Conn. Sup. 470 (1952). If the legislature wished to alter that rule it would have done so with much clearer language. It is also unlikely that the legislature would render court decisions on issues of security liens nugatory without at the very least changing the language in statutes which provide the judge the discretion act in such areas. Section 46b-171, Connecticut General Statutes.
For all the above reasons the appeal is sustained and the matter is remanded for actions consistent with this decision.
Barall, J.