THE HOYT-BEDFORD COMPANY *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 1, 1959—decided January 19, 1960

*Mildred Weil,* for the appellant (plaintiff).

*Alphonse C. Jachimczyk,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, C. J.  On June 5, 1957, the International Brotherhood of Teamsters, Chauffeurs, Warehouse-

men and Helpers of America, Local No. 191, A.F.L.–
C.I.O., hereinafter called the union, complained to
the state board of labor relations, hereinafter called
the board, that The Hoyt-Bedford Company, herein-
after called the company, had engaged and was en-
gaging in unfair labor practices as defined in what
is now General Statutes § 31-105. After a hearing,
the board, on December 23, 1957, found that the
company had discharged three of its employees and
refused to reinstate them because they had joined a
union and had engaged in concerted activities for
the purpose of collective bargaining, that the com-
pany discouraged membership in a union by dis-
criminating against union members in employment
and tenure, that it required its employees as a con-
dition of employment or reinstatement in employ-
ment to refrain from joining a union and that the
company refused to bargain collectively with the
union as the exclusive representative of its employ-
ees. The board issued an order that the company
cease and desist from these practices, that upon re-
quest it bargain with the union as the exclusive
representative of its employees, and that it offer
to the three employees discharged immediate re-
employment without prejudice and reimburse them
for any loss in wages which they might have suf-
fered. The company appealed to the Superior Court,
which sustained the board, and from that judgment
the company has appealed to this court.

The following facts, recited by the board in its
summary of the evidence, are substantially undis-
puted: The company owns and operates apartment
buildings at 122-126 Hoyt Street in Stamford. These
were built and financed pursuant to specifications
and regulations of the federal housing adminis-
tration, hereinafter called the F.H.A., and at the

time herein referred to were less than three years old. The rents charged were in the middle rental range for apartments in that area. Approval of the F.H.A. was required for any increase. The company had been operating these apartments at a loss ever since they were built, although an increase in rents had been approved in September, 1956. It employed seven persons to do the maintenance and cleaning work. On December 26, 1956, as the result of an election held on December 18, 1956, the board certified the union as the exclusive representative for these workers for collective bargaining purposes. On January 8, 1957, representatives of the union and the company met and collective bargaining negotiations began. The union submitted a comprehensive agreement and the company's representative told the union's representative that any increase in wages or other benefits would have to be subject to the approval of an increase in rents by the F.H.A. The company informed the F.H.A. of the negotiations and the higher cost of maintenance which the proposed wage increases would entail. It asked for the approval of a rent increase to offset this higher cost. The F.H.A. advised the company by letter that if it signed a contract with the union it could apply for an increase in rents and the matter of approval would then be determined. While the board's summary of the evidence does not expressly so state, the same letter contained an inquiry by the F.H.A. whether an increase in rents would put the company in a poor competitive position in the rental market. The company replied that since the increase in September, 1956, there had been considerable resistance to the rents by prospective tenants and that any further increase made necessary by the union contract might put the company in the

position of competing with newer and more elaborate apartments recently completed in Stamford. Further bargaining sessions were held on February 14 and 28 and April 29. On the latter date the parties had tentatively agreed to a $5 a week wage increase and the payment of 7 cents an hour for a welfare fund, for each employee, and that a request for a rent increase would be submitted to the F.H.A. when a complete contract was agreed upon.

From the very beginning of the construction of the buildings, the company had considered the possibility of entering into a contract with William J. Murray, Inc., to do the cleaning work which was being done by three of the company's employees. It had received estimates but had found that it could do the work more economically with its own employees. However, a survey made by the company's controller in the early part of May, 1957, while the negotiations with the union were in progress, showed that the cost of the work under the existing arrangements with the company employees was $12,182 a year and that the estimated cost under the proposed union contract, with increased wages, welfare fund contributions and a work week reduced from 48 to 44 hours, was $15,909.84 for the first year, with possible increases to follow. About the middle of May, William J. Murray, Inc., submitted a contract to do the same work for $14,440. The company accepted this proposal and thereafter discharged, effective June 1, 1957, three of its employees who had been doing the cleaning work. The union representative was under the impression that all of the company's employees in the bargaining unit had been discharged and the company's representative, at a meeting attended by both on June 19, 1957, did not inform the union representa-

tive that only three of its seven employees had been discharged.

The crucial issue presented by the appeal is whether the evidence before the board supports the finding that the company was engaged in unfair labor practices. In *Imperial Laundry, Inc.* v. *State Board of Labor Relations,* 142 Conn. 457, 115 A.2d 439, we considered the nature of an appeal to the courts, such as the one in the present case, from a finding and order of the board. We said (p. 461) that, on factual questions, the function of the court is "to examine the record [of the board] to determine whether the ultimate findings of the board were supported, as the statute [now § 31-109 (b)] requires, by substantial evidence." We then stated that findings which the court determines were thus supported cannot be disturbed. "Substantial evidence," we observed, "is evidence that carries conviction. . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." For similar definitions of substantial evidence, see *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126; *National Labor Relations Board* v. *Columbia Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660; *Coppus Engineering Co.* v. *National Labor Relations Board,* 240 F.2d 564, 570; *Martel Mills Corporation* v. *National Labor Relations Board,* 114 F.2d 624, 628.

The company's decision to change its method of operation without notifying the union of its proposed change and offering to the union the opportunity of matching the offer made by William J.

148

Murray, Inc., was within its right under the circumstances. *Amalgamated Assn. of Street, Electric Railway & Motor Coach Employees* v. *Greyhound Corporation,* 231 F.2d 585, 586; *National Labor Relations Board* v. *Adkins Transfer Co.,* 226 F.2d 324, 328; *National Labor Relations Board* v. *Houston Chronicle Publishing Co.,* 211 F.2d 848, 854; *Paul* v. *Mencher,* 169 Misc. 657, 658, 7 N.Y.S.2d 821, aff'd, 254 App. Div. 851, 6 N.Y.S.2d 379; *Sloan* v. *Journal Publishing Co.,* 213 Ore. 324, 344, 324 P.2d 449; note, 152 A.L.R. 149. Faced with the need of meeting a higher cost of operation with a rent increase which might not be approved by the F.H.A., and the prospect that a rent increase might worsen its position in a competitive rental market, the company adopted a course calculated to avoid a continuing increase in the cost of an unprofitable operation. This conduct, under the circumstances, lends scant support to an inference of anti-union animus. The failure to advise the union representatives that not all, but only three, of its employees had been discharged appears, upon all the evidence, to have been due to a misunderstanding. It hardly warrants an inference of hostility to union activity. The conclusions upon which the board based its order are not supported by the substantial evidence required by the statute.

There is error, the judgment is set aside and the case is remanded with direction to sustain the company's appeal.

In this opinion the other judges concurred.