L. SUZIO CONSTRUCTION COMPANY *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

136

Argued December 8, 1960—decided February 21, 1961

*Alphonse C. Jachimczyk,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellant (defendant).

*Samuel H. Platcow,* with whom was *Francis R. Danaher,* for the appellee (plaintiff).

SHEA, J. Albert Ceruti and Donald Jakiela, hereinafter called the complainants, were employees of the plaintiff. They were also members of Truck Drivers and Helpers Local 677, hereinafter referred to as the union. On February 14, 1956, the complainants filed with the defendant written charges that the plaintiff had engaged and was engaging in unfair labor practices under what is now General Statutes § 31-105. After a long delay, the agent of the defendant, acting under its directions, issued a complaint and gave notice to the plaintiff of the time and place of a hearing. The defendant found that (1) the complainants had been discharged by the plaintiff on December 29, 1954, because they had joined and assisted the union and engaged in concerted activities with other employees for the purposes of collective bargaining and other mutual aid and protection; (2) that the plaintiff had refused, and still refuses, to reinstate the complainants in their former positions, although they have requested the plaintiff to do so; and (3) that the plaintiff restrained, coerced or interfered with the complainants in the exercise of their rights, as alleged in the complaint.[1] On these findings, the defendant ordered the plaintiff to cease and desist from doing certain acts or engaging in certain conduct which would, if carried on, constitute unfair labor practices. The defendant also issued orders requiring the plaintiff to take affirmative action by offering to the complainants full and immediate employment, to make them whole for any loss of pay they may have suffered by reason of their discharges, and to take af-

---

[1] The complaint also charged that the plaintiff had spied upon, or kept under surveillance, the activities of the employees in the exercise of their right of self-organization, in violation of General Statutes § 31-105 (1). The defendant found that this charge was not proved and dismissed it.

firmative action in other respects so as to effectuate the policies of the Labor Relations Act.

Claiming to be aggrieved by the orders of the defendant, the plaintiff appealed to the Superior Court. The court sustained the appeal and set aside the orders. The defendant has appealed to this court.

In reviewing a final order of the defendant, the Superior Court does not try the matter de novo. Its function is not to adjudicate the facts. *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings of the defendant were supported, as the statute requires, by substantial evidence. General Statutes § 31-109 (b). If the findings are supported by substantial evidence, they cannot be disturbed. Substantial evidence is evidence which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. *Hoyt-Bedford Co.* v. *Connecticut State Board of Labor Relations,* 147 Conn. 142, 147, 157 A.2d 762; *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* supra.

The question here is whether there was substantial evidence before the defendant to warrant its ultimate findings. From the evidence, the defendant could reasonably have found the following: The plaintiff is engaged in selling and trucking concrete mix. Henry Altobello was its president and treasurer in January, 1954, and he and Leonard Suzio were actively engaged in the operation and manage-

ment of the business. During the spring of 1954, Walter Dinkoski, the business representative for the union, began a movement to organize the employees of the plaintiff. Dinkoski enlisted the aid of Ceruti, who was primarily responsible for starting the union. Two of the organization meetings were held at Ceruti's house. Altobello and Suzio knew of at least one of these meetings. After it, they had a heated argument with some of the men. In the course of the argument, Altobello told Ceruti, "You can have your union [but from] now on, you work four hours a day and I'll get rid of you before the year is up." The union's efforts to organize the plaintiff's employees were quick and effective. A contract to engage in collective bargaining was signed by the plaintiff and the union about August 1, 1954. While the union was being organized, the plaintiff's yardman called the employees into the office, one at a time, and told each man that Altobello would give him a raise of ten cents an hour if the union was dropped. After the union was organized, the plaintiff's employees received an increase of thirty cents per hour in their wages.

The plaintiff then began to cut down on the work time so that many of the men were allowed to work only four hours a day. Although there was work to be done, several of the drivers had their work time reduced. Ceruti was sent home early for lack of work, while other men who did not belong to the union were taken from the quarry and given jobs driving the trucks. Jakiela, among others, noticed that Ceruti was given shorter time at work. Jakiela asked one of the foremen why the plaintiff was sending Ceruti home for lack of work, when, at the same time, nonunion drivers were replacing him. Jakiela was told by Suzio to keep his mouth shut

or he would be put on the black list along with Ceruti. In March, 1954, Ceruti was indebted to the plaintiff. He had authorized it to deduct money from his weekly wages to repay this obligation. The plaintiff had been deducting, although somewhat irregularly, about $10 each week. When the contract with the union was signed, the plaintiff began to withdraw from his pay $20 each week. Ceruti complained to Dinkoski, the union representative, about the cut in his hours of work. The union took the matter up with the plaintiff, which made a pay adjustment in one instance where a man who was junior to Ceruti had been brought in.

Late in December, Suzio called a meeting at which Dinkoski and the employees were present. They talked about the seniority provisions of the contract. Suzio obtained from Dinkoski an agreement that, under the union contract, seniority governed layoffs but not the recall of men after layoffs. On the following Friday, the plaintiff laid off a number of employees, including the complainants, claiming that the layoff was caused by lack of work because of inclement weather. About ten days after the layoff, the plaintiff started to recall some of the men, and between that time and April 1, 1955, all of the men except the complainants and two other men were recalled. Jakiela was the highest in seniority. Ceruti had seniority over all but one of those recalled. While two men besides the complainants were not rehired in 1955, the reasons for their failure to be rehired were not given.

When the plaintiff failed to recall the complainants to work, the union sought and obtained arbitration before the state board of mediation and arbitration on the question, "Did the Company violate the Contract by failing to recall [Albert Ceruti and

Donald Jakiela]?" The clauses of the contract involved were article 4 (hours), § (f), which provided, "Seniority shall prevail at all times and preference shall be given to employees older in service and in the order of their seniority to the work available, provided, such employee is qualified and available," and article 6 (stewards and seniority), providing in substance that a steward as designated by the union should be the last employee to be laid off regardless of seniority, and that as to other employees on the seniority list the last hired should be the first laid off. On May 25, 1955, the state board of mediation and arbitration filed its award, stating: "The Contract between the parties is unusual in that, while it states explicitly that layoffs are to be in accord with seniority, it is silent about any application of seniority in recalls. The implication follows logically that recalls should follow seniority, but several considerations militate against the Board drawing such a conclusion from the Contract . . . ." The board then went on to point out, among other things, that the plaintiff's representatives and the union's business agent, Dinkoski, had agreed that under the language of the contract the plaintiff had no obligation to recall by seniority. The conclusion in the award was that the plaintiff did not violate the contract by failing to recall the complainants.

In June, 1955, the complainants filed a complaint with the national labor relations board, but that board refused to take jurisdiction. In February, 1956, the complainants, in the present charges filed with the defendant, claimed that the plaintiff had discriminated against them because of their activities in the union and that the plaintiff was guilty of unfair labor practices. On September 17, 1958, the agent of the defendant decided not to issue a com-

plaint against the plaintiff. He filed with the board a report giving the reasons for this refusal. Upon receipt of this report, the defendant held a hearing at which considerable evidence was introduced by the parties. This hearing was apparently held upon the theory that it was on an appeal from the action of the agent.

On April 8, 1959, the defendant decided that the decisions of the state board of mediation and arbitration and the national labor relations board did not constitute a bar to the issuance of a complaint against the plaintiff, that there was reasonable ground for the charges filed by the complainants, and that a complaint should issue. Two days later, the agent for the defendant issued a complaint charging the plaintiff with violations of subsections (1), (4), (5) and (10) of General Statutes § 31-105. At the hearing upon this complaint, the defendant declared that it would consider the testimony heard by it at the time its agent filed his report. It also gave the parties an opportunity to adduce additional evidence relating to the charges. At this point, the plaintiff made the claim that the defendant was sitting in judgment on a complaint on which the defendant, itself, had found probable cause and that it could not, with propriety, hear the case. At the first hearing, the defendant purported to act under certain regulations adopted by it. However, it had no authority to adopt those particular regulations, because a different procedure was already set out in General Statutes § 31-107 (a). This provides that when the agent recommends dismissal of a complaint, the defendant may issue an order dismissing the complaint or may order a further investigation or a hearing thereon. In this case, when the agent reported to the defendant, it did not dismiss the

complaint, nor did it order a further investigation. It heard a considerable amount of evidence relating to the charges made by the complainants. While it assumed to act at the first hearing as a board reviewing the action of its agent, the real effect of what it then did was to hold a hearing upon the merits of the controversy. Thus, it did not act in violation of the statute. It properly overruled the plaintiff's claim and proceeded with the second hearing.

The defendant inferred from the evidence before it that it was the fixed intention of the plaintiff at the time of the layoff of the employees on December 29, 1954, not to recall the complainants but to get rid of them. The layoff of the other employees was temporary, but as to the complainants it was intended to be, and was, in fact, a full discharge of them in accordance with the predeclared purpose and intention of the plaintiff. The defendant was justified in finding that the union was recognized and accepted by the plaintiff because of economic pressure. Ceruti was primarily responsible for the organization of the union, the advent of which increased the cost of the plaintiff's operations. The plaintiff was aware of Ceruti's activities and began to discriminate against him by reducing his working hours and in respect to the deductions from his pay. When Jakiela complained to the plaintiff about its treatment of Ceruti, he was told, in effect, to mind his own business or suffer the consequences of being placed on the black list along with Ceruti. From all this evidence, the defendant was entitled to draw the inference that, when the complainants were laid off with the other employees on December 29, 1954, the plaintiff was, in fact, discharging them because of their activities in connection with the union. The

testimony of Dinkoski, the union representative, was in conflict with that of Ceruti and some of the other employees, but there was evidence to show that Dinkoski and Ceruti were not on friendly terms. While there was a conflict in the evidence, the defendant was entitled to accept that which to it seemed the more credible. So long as there was substantial evidence to support the findings of the defendant, the court is unable to interfere. *National Labor Relations Board* v. *Deena Products Co.*, 195 F.2d 330, 332 (7th Cir.); *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations*, 142 Conn. 457, 461, 115 A.2d 439. The defendant found, and was warranted in finding, that the plaintiff was and is engaging in unfair labor practices within the meaning of subsections (4), (5) and (10) of § 31-105.

The Labor Relations Act does not interfere with the normal exercise of an employer's right to discharge his employees. The discharge, however, must not amount to a subterfuge to circumvent the provisions of the act. *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation*, 301 U.S. 1, 45, 57 S. Ct. 615, 81 L. Ed. 893; *Williams Motor Co.* v. *National Labor Relations Board*, 128 F.2d 960, 964 (8th Cir.); see *National Labor Relations Board* v. *Cape County Milling Co.*, 140 F.2d 543, 545 (8th Cir.); *Imperial Laundry, Inc.* v. *Connecticut State Labor Relations Board*, supra.

In the court below, the plaintiff claimed that the defendant was barred from consideration of the charges made by the complainants because of the action of the state board of mediation and arbitration. This claim is without merit. The action of that board was based upon a single inquiry: "Did the Company violate the Contract by failing to recall [Ceruti and Jakiela]?" This question had ref-

erence only to the violation of the contract. It did not involve the determination whether the action of the plaintiff constituted unfair labor practices within the meaning of our Labor Relations Act. The award of the state board of mediation and arbitration was not a bar to the inquiry made by the defendant. *New Britain Machine Co.* v. *Lodge 1021,* 143 Conn. 399, 404, 122 A.2d 786; *American Brass Co.* v. *Torrington Brass Workers' Union,* 141 Conn. 514, 521, 107 A.2d 255.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion BALDWIN, C. J., KING and MELLITZ, Js., concurred; MURPHY, J., dissented.