[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPEAL
This case involves an appeal from a decision of the Commission on Human Rights and Opportunities (CHRO). In February 1994, the plaintiff was terminated from his position as Senior Manufacturing Engineer by Sikorsky. In August 1994, the plaintiff filed a complaint with the CHRO claiming his discharge was CT Page 8185 because of age and disability in violation of § 46a-60 (a)(1) of our General Statutes and 42 U.S.C. § 1201
(Americans with Disabilities Act), sections 503 and 504 of the Rehabilitation Act of 1973 as amended and 29 U.S.C. § 612, et seq. of the Age Discrimination in Employment Act of 1967. The CHRO accepted jurisdiction of the complaint and assigned it a control number. On December 10, 1996, the CHRO issued a finding of no reasonable cause on the merits for the complaint.
The plaintiff has now appealed claiming the finding of no reasonable cause was illegal and an abuse of discretion because the CHRO:
 1. failed to fully investigate the charge by improperly utilizing performance evaluations comparing the plaintiff with other retained employees;
 2. failed to identify a deliberate pattern, on the part of the employer, to downgrade performance reports of protected status employees such as the plaintiff selected for termination;
 3. failed to give proper legal conclusion to the treatment of other employees in the plaintiff's job category as it relates to the claim of the plaintiff.
The plaintiff has requested that the court sustain the appeal and that a judgment modifying the agency's decision be entered and that an order enter that the agency reverse its decision and find in favor of the plaintiff.
The court will first review the procedural steps that are statutorily mandated once a complaint affidavit is initially filed with the CHRO alleging discrimination and the case law that has been developed to test the actions of the agency in exercising its statutory responsibilities.
Once a complaint affidavit is filed, the agency, pursuant to § 46a-83 (b), reviews the complaint and "shall" dismiss it if it is "frivolous on its face or there is no reasonable possibility that investigating the complaint will result in a finding of probable cause" that the alleged discrimination has occurred. CT Page 8186
Such a review was held here and the complaint was not dismissed at this stage. Under § 46a-83 (c) a second stage is then reached where the "agency may conduct mandatory mediation sessions, expedited or extended fact finding conferences or complete investigations or any combination thereof during the investigatory process for the purpose of finding facts, promoting the voluntary resolution of complaints or determining if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint." The statutory subsection goes on to say that "reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint."
Section 46a-83 (d) then states that the agency investigator, after making the statutorily mandated inquiries, "shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it was based" in the statutorily defined time periods. If no reasonable cause is found, the matter is dismissed and the agency takes no further action. If reasonable cause is found, the matter proceeds to the hearing stage. Here the investigator made a finding of no reasonable cause, as indicated, and that is why the appeal has been filed. The following findings and conclusions were made to support the positions reached by the agency investigator:
 1. Complainant is a member of a protected class, in that he is 50 years old (dob 1/18/44) and has a physical disability (chronic heart problems and also a 7.5% permanent partial disability of his back due to a workers compensation injury). (A1, B3)
 2. There is no dispute that Complainant was qualified for his position with Respondent and performed in a satisfactory manner. His performance evaluations were generally "fully competent." (C3, B3, D1)
 3. Complainant was laid off from his position as a Senior Manufacturing Engineer Grade 46 as part of a reduction in force in February 1994. Subsequent to the filing of his complaint, Complainant provided documentation that he applied for an open CT Page 8187 position with Respondent for a similar position a year after his layoff, by sending a letter to his former supervisor expressing interest in the position. He was not rehired into that position. (A1, D1, B1)
 4. As part of the reduction in force, three of the seven Senior Manufacturing Engineers in Complainant's work unit were terminated. In addition to Mr. Lansi, a younger non-disabled individual whom Complainant alleges was retained over him, the four employees retained in that position were younger than Complainant: clock #23258 (38), clock #28304 (43), clock #29253 (34) and clock 29514 (28). None of the retained individuals are known to have a disability. (C1, C2, C5)
 5. Respondent's legitimate, non-discriminatory reason for terminating Complainant instead of the younger employees was his performance. In conducting a reduction in force, Respondent compares the skills and performance of all of the employees in the position targeted for reduction with each other. In comparing performance, the three most recent performance reviews are used. The employees with the lowest performance/skills are targeted for reduction. Complainant's performance was "fully competent" for the last three performance reviews; his performance never exceeded competent or satisfactory since he was hired in 1983. On two occasions, his performance was "marginal". The employees retained, according to Respondent, had "superior" performance reviews, and were targeted for retention over Complainant. (D1, C3, C7)
 Although the complaint was never amended to add allegations of "failure to hire", the investigator explored the issue with Respondents of why Complainant was not contacted after indicating his interest in an available position a year after his layoff. Mr. Driscoll acknowledged receiving Complainant's letter; he stated that he did not consider Complainant for an available position because of his inconsistent and only satisfactory CT Page 8188 performance during his prior period of employment. Complainant did not contest this issue further. (D1)
 6. There is no direct evidence of discrimination based on age or physical disability. Complainant has not stated that he was ever told that he was being evaluated lower than other employees based upon protected status. However, Complainant does raise the issue that several individuals, against whom he was compared, received superior evaluations in the category of "cooperation" because they put in overtime hours. Complainant asserted that he was unable to work overtime, based upon his physician's restrictions, and was thereby denied the superior rating in that category because of his physical limitations. A careful review of the performance indicates, however, that even if the Complainant was evaluated as superior in "cooperation", his overall evaluations would have remained as "fully competent". The other employees retained received higher ratings in categories such as problem solving, control and follow-up, communication. The only category where Complainant was consistently rated superior was technical ability. The retained employees had several superior and even outstanding categories. (D1, C7, B3, C3)
 7-8. Respondent's legitimate, non-discriminatory reason was articulated by Mr. Langomarsino, Complainant's former supervisor, Chief of Manufacturing Planning Support and Mr. Driscoll, Manager of Manufacturing Engineering. They have personal knowledge of the decision making process and participated in the decisions. They are competent to testify in a competent forum. (D1, Cl)
 9-10. Respondent's reasons are both true and credible. Respondent provided Complainant's performance evaluations since he was hired in 1983; all indicate that his performance was satisfactory or competent at best, with a few marginal ratings. The most recent three reviews of the individuals retained in Complainant's job title were also provided, and they indicate superior or outstanding ratings. Complainant disputes the process, stating that the individuals he was compared to were primarily group leaders and other CT Page 8189 supervisory personnel. However, they were the same job type and class: Senior Manufacturing Engineers, labor grade 46. Mr. Lansi, one of the individuals whom Complainant alleges he should have been compared to, was compared to Complainant. He also had higher ratings than Complainant. Mr. DeMatteo, another individual Complainant alleges was retained over him, was not a Senior Manufacturing Engineer, labor grade.
 Complainant frequently disputed his performance reviews, almost for as long as he was employed by Respondent. Those reviews were consistent, however, throughout his employment. Although Complainant stated that his absence record, occasioned by his disability and workers compensation injury, was held against him in those reviews, there is no evidence of that. Complainant was rated lower than his co-workers in many areas other than attendance.
 Of the individuals remaining in Mr. Langomarsino's group after Complainant's termination, several were older than Complainant and several were younger. One of the original senior manufacturing engineers retained in the original layoff transferred to another department prior to Respondent's answer to this Complaint. There were eight engineers remaining: three Senior Manufacturing Engineers (38, 34, 28), one Project Manufacturing Engineer (51), and four Manufacturing Engineers (39, 61, 31, 28). (B2, 3, C3, C5)
The plaintiff has appealed from the no reasonable cause decision of the agency which in effect dismissed the plaintiff's complaint affidavit before the commission.
The court will first discuss the standards to be applied by a court entertaining an appeal from such an agency decision and then discuss the facts and allegations of this case in light of those standards.
The Uniform Administrative Procedure Act governs the judicial review of administrative decisions of this type. The court's task is to decide whether "the agency . . . has acted unreasonably, arbitrarily, illegally or abused its discretion," Ottochian v.FOIC, 221 Conn. 393, 397 (1992), but the court "may not retry the case or substitute its judgment for that of the agency." SmithCT Page 8190v. Zoning Board of Appeals, 227 Conn. 71, 80 (1993). In short, court review "is very restricted" and in an appeal from "a decision of the CHRO the Superior Court may not try the case de novo, adjudicate facts or substitute its own discretion for that of the investigator." Billings v. CHRO, 18 Conn. App. 241, 243
(1989); Duhaime v. CHRO, 236 Conn. 250, 260, N. 11 (1996). In effect, the factual conclusions of the investigator must be given great weight if there is substantial evidence in the record to support those conclusions. Adriani v. CHRO, 220 Conn. 307,314-315 (1991); also see Hospital Assn., Inc. v. Comm. on Hospitals Health Care, 200 Conn. 133, 140 (1986); Suzio Construction Co. v.State Bd. of Labor Relations, 148 Conn. 135, 138 (1961). As noted by the defendant agency, "substantial evidence" has been defined to mean evidence which affords a "substantial basis of fact from which the fact in issue can be reasonable inferred" . . . [this] "allows less room for judicial scrutiny than does the `weight of evidence' rule or the `clearly erroneous' rule." Conn. Bldg.Wrecking Co. v. Carothers, 218 Conn. 580, 593 (1991). As noted in both Carothers and Briggs v. State Employees RetirementCommission, 210 Conn. 214, 217-218 (1989), the court "must defer to the agency's assessment of the credibility of witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part."
All of this boils down to the straightforward proposition to the effect that the ultimate consideration is not what the court would have decided faced with the same allegations and facts, but whether the record subject to review supports the action of the agency. Miko v. CHRO, 220 Conn. 192, 200-201 (1991);Ierardi v. CHRO, 15 Conn. App. 569, 582 (1988).
The basis of all these standards and formulations and what makes them constitutionally acceptable and reasonable from the point of view of fairness is that, in regulating or overseeing specialized areas of activity, the state has a right to set up trained and expert agencies who hopefully will have the experience to deal with sometimes complicated problems more quickly and efficiently than common law courts. The saving grace of all this is that, although administrative remedies must be exhausted before access can be had to the courts, aggrieved parties can not only appeal agency decisions but complainants can bring civil suit concerning the same complaints they brought to the state agency.
 (2) CT Page 8191
The foregoing discussion focuses on the appropriate role of the reviewing court in passing on the no reasonable cause decision of the agency in a case such as this. What, however, is that appropriate process by which the agency itself reaches its decision on whether there is reasonable cause to support the complaint affidavit?
The reasonable cause standard requires the CHRO to consider all reliable probative evidence including evidence unfavorable to the complainant's claim — this is necessary to protect respondents from baseless claims. As noted, the commission in performing its task is entitled to make findings on disputed issues of material fact by weighing witness' credibility and drawing inferences. Adriani v. CHRO, 220 Conn. 307, 316-317
(1991), citing Ierardi v. CHRO, 15 Conn. App. 569 (1988).[1]
What is emphasized in Ierardi and Adriani, however, is that "the standards of proof applicable to the reasonable cause determination are not the same as those that apply at the hearing stage," which would be reached if reasonable cause were to be found. At the hearing stage, the hearing officer would have to decide which of two theories developed under federal case law apply: (1) the direct evidence or mixed motives theory, PriceWaterhouse v. Hopkins, 490 U.S. 228, 446 (1989); or (2) the disparate treatment theory, Texas Dept. of Community Affairs v.Burdine, 450 U.S. 248, 252 (1981). Once a prima facie case is made under the mixed motives theory, certain burdens of explanation and production shift to the employer. The plaintiff here argues this is a mixed motive case and the burden shifting admonitions of Price Waterhouse apply since a prima facie case of prohibited discrimination had been made out. But Adriani makes clear that at that reasonable cause stage the Price Waterhouse
and Burdine theories and tests do not apply. If the commission applied such theories it would be engaging in an "improper analysis," 220 Conn. at page 322 n. 14, "this choice of theories is irrelevant to the reasonable cause determination." Id. This is so apparently because the burden to establish a prima facie case at the hearing stage is so difficult in these types of cases that it is only fair to shift burdens of proof to parties who have easy access to information that can resolve disputed issues.
That is not the case at the preliminary decision stage where it must be decided whether there in fact should be a hearing; both Ierardi and Adriani make clear that in CT Page 8192 deciding whether there should be a hearing, the reasonable cause standard and the decision as to whether it was exercised in accordance with the requirements set forth in Adriani is not to concern itself with the Burdine and Price Waterhouse tests which were manufactured for use at the hearing stage.
Given the foregoing principles, the question that must now be decided as to whether there was substantial evidence in this record to support the commission's conclusion that there was no reasonable cause to support the plaintiff's affidavit of complaint claiming he was discharged because of age and disability. The court has read the record and heard the tape of the hearing conducted by the CHRO investigator at which the plaintiff testified as well as representative of the defendant.
The court will review the relevant facts set forth in the record.
 (a)
The reason advanced by the defendant for the plaintiff's discharge was based on business conditions caused by the loss of some government work. Each department or section had to dismiss a certain number of workers. In the plaintiff's unit this meant, of a total of seven engineers, three had to be let go. The plaintiff was one of the people dismissed. There is no supportable claim made here that this so-called downsizing was pretextual, in other words, that it was used as a device or excuse to get rid of older or disabled workers. The records provides substantial evidence that Sikorsky downsized because of the economic situation it found itself in — vague conclusory statements during the hearing by the plaintiff that there was work that he could have done if not laid off really miss the point that economic necessity forced the downsizing. That's what happens in downsizing — the remaining workers may have to work harder and do work in the past that discharged workers could have done. That hardly establishes that the downsizing itself was pretextual.
Also, there is no claim made here that the method used by Sikorsky to determine which people would be dismissed was intrinsically unfair or weighted so as to be likely or more likely that older or disabled workers be laid off. Sikorsky management examined the performance reviews of the last three years of each of the seven engineers to decide which three would CT Page 8193 be let go as a result of the decision to downsize. Again, there is no claim that such a test or method of deciding on whom to lay off was in itself unfair, inappropriate or otherwise violative of anti-discrimination laws.
The court has examined the plaintiff's performance reviews for the three year period and compared them with those of the employees who were retained. The reviews make judgments about six areas of work — technical competence; planning/effective time management; problem solving/decision making; control/follow up; cooperation; communication. In each category there is a space to rate a worker as to each category — outstanding, superior, fully competent, marginal, unsatisfactory.
The plaintiff received mostly "fully competent" ratings in the three year period. He received two "superior" ratings for technical competence for the last two years and "marginal" ratings for cooperation in the first and third years. The four retained employees received much better reviews. None had "marginal" ratings and each had several "superior" ratings and "outstanding" ratings.
The plaintiff claims that the verbal comments attached to the ratings of the four retained employees were the same as those for the plaintiff but he got only a "fully competent" rating while the retained people with similar comments got "superior ratings." Thus, there was a "bias" against the plaintiff. The court does not agree with this characterization. To use two examples, on an August 2, 1993 review, the plaintiff, according to his brief, received a "fully competent" rating when the comment said he used his time "efficiently and effectively." A retained employee got a "superior" rating but the comment attached to this rating, according to the plaintiff, was also "uses time efficiently and effectively." But if the comment of the retained employee is examined, it really says he used his time "very efficiently and effectively." (Cf. Exhibit C of Plaintiff's Brief with Exhibit E). Another example is Exhibit D where the plaintiff received a "fully competent" rating with the comment "Uses time effectively . . . meets set priorities and objectives." The plaintiff then refers to Exhibit H, a review of a retained employee who received a "superior" rating where the plaintiff represents the comment to be ". . . met division goals and manufacturing targets." But if the full comment is examined, it is much more glowing. It says the person in question "has effectively managed the liaison activity in the Major Assembly, CT Page 8194 SOA final assembly in addition to numerous special assignments that enables the group to meet divisional goals and manufacturing targets." The full comment for the plaintiff in Exhibit D is much more general, saying the plaintiff uses his time efficiently and effectively, allowing him to meet his priorities.
The court has read the reviews of the plaintiff and the comments attached to each of his ratings and compared these with the reviews, ratings, and comments of the retained employees. It is the court's opinion that there is substantial evidence to support the agency's conclusion that the reviews of the retained employees were significantly better than those of the plaintiff and the comments attached to "superior" ratings for retained employees do generally read more positively — often much more positively — in categories where the plaintiff received "fully competent" ratings. Also, it is obvious these comments are short, subjective, fairly offhand remarks which cannot, in all cases, be fairly and effectively used to invalidate ratings that were given or to provide a basis to make a comparative analysis of the ratings actually given. Furthermore, there is nothing in the record to indicate Sikorsky's decision that some people had to be discharged was made prior to the preparation of these reviews so there is no credible reason to believe the reviews and their contents were skewed to allow the company to act with a discriminatory motive in mind.
 (b)
The plaintiff also appears to raise the argument that he was prejudiced because his reviews took account of his disability. The record reflects the plaintiff had a disability due to a heart condition. He was ordered not to work overtime. He was asked to sign an acknowledgment of physical defect soon after he was hired in 1982. He was also injured in a job-related accident. In 1991, the plaintiff received a "marginal" rating in the "cooperation" category and it was noted he had to "make an effort to minimize his absenteeism." In his 1992 review, he received a "fully competent" rating and absenteeism is not referred to — it does say he had to be "more flexible and adjust to constant work load changes." In 1993, he received another "marginal" rating in this category. The comment said he "must improve his absenteeism, his absence on previous years have been also excessive with only periodic improvement." Another 1993 review gives the plaintiff a "fully competent" rating in the "cooperation" category and states CT Page 8195 "his attendance needs additional improvement." The plaintiff claims that his absenteeism resulted from his disability and taking it into account thus violated his rights. It is true that the retained employees received several "outstanding" ratings in the "cooperation" category.
The defendant claims that some of these absences were not attributable to his chronic heart problems but other conditions. The record is very sparse from the point of view of both sides as to the actual reasons for the absenteeism in the crucial three year period where the employees were being evaluated for possible dismissal.
The defendant in its brief cited and quoted from the case ofTyndall v. National Educational Centers, 31 F.3d 209, 213
(C.A. 4, 1994). There the court said:
 "In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis. Except in the unusual case where an employee can effectively perform all work related duties at home, an employee `who does not come to work cannot perform any of his job functions, essential or otherwise.' Wimbley v. Bolger,642 F. Sup. 481, 485 (W.D. Tenn., 1986), aff'd 831 F.2d 298
(6th Cir. 1987). Therefore, a regular and reliable level of attendance is a necessary element of most jobs. See, e.g., Carr v. Reno, [23 F.3d 525, 529] (D.C. Cir. 1994) (holding that `coming to work regularly' is an `essential function'); Law v. United States Postal Service, 852 F.2d 1278, 1279-80
(Fed. Cir. 1988) (holding that attendance is a minimum function of any job); Walders v. Garrett, 765 F. Sup. 303, 309 (E.D. Va. 1991) (holding that `reasonably regular and predictable attendance is necessary for many [jobs]'), aff'd, 956 F.2d 1163 (4th Cir. 1992); Santiago v. Temple Univ., 739 F. Sup. 974, 979
(E.D. Pa. 1990) ('attendance is necessarily the fundamental prerequisite to job qualification'), aff'd, 928 F.2d 396 (3d Cir. 1991). An employee who cannot meet the attendance requirements of the job at issue cannot be considered a `qualified' individual protected by [antidiscrimination law]."
CT Page 8196
Also see Allen v. G.T.E. Mobile Communications, 6 A.D. cases 1063 (D.C. N.D. Ga., 1997) Jackson v. Veterans Admin.,22 F.3d 277, 279 (C.A. 11, 1992); Matzo v. Postmaster Gen., 685 f. Supp. 260, 263 (D.D.C., 1987). In Allen, the court noted ". . . it is undisputed that regular attendance is an essential function of plaintiff's management-level position in a relatively small group of employees. Therefore, plaintiff's failure to attend work on a regular basis even when actively employed makes her unqualified for the position." Id. page 1065. It is difficult to ascertain the relevance of these cases to the issue now before the court. The number of absences for each of the three year evaluation period is not clear to the court. The reasons for each absence has not been documented. There is no claim here that the absences were so important a factor that the plaintiff could not perform is job and was not competent to do so overall.
However, absenteeism is a factor in only one of the six categories used to evaluate employees — "cooperation" — and in that category itself it is only one of the factors mentioned in defining the employee's level of cooperation. The retained employees scored substantially higher than the plaintiff in the other categories viewed as a whole and, as the agency investigator noted, even if the plaintiff was given a "superior" rating in the "cooperation" category, the retained employees overall had better annual reviews for the three year period. The court concludes that there was substantial evidence to support the commission's conclusion that there was no reasonable cause to find discrimination on account of disability so as to result in this man's losing his job.
 (c)
The plaintiff also notes that Sikorsky examined the performance reviews of the employees in the plaintiff's work unit for a three year period before deciding which people were to be discharged. The CHRO investigator, according to the plaintiff, looked at the plaintiff's reviews for a period going back to the commencement of his employment some 12 years previously. It is difficult to ascertain the thrust or relevance of this position since the court concludes that the reviews for a three year period provided substantial evidence to support the agency's no reasonable cause determination. In other words, the three year review of the retained employees are clearly better than those of the plaintiff, so it can hardly be argued that the agency had to go further back in the plaintiff's performance records to justify a decision that CT Page 8197 was otherwise insupportable.
In any event, part of the confusion results from the fact that after the initial complaint was filed, the plaintiff, by letter, brought up an added issue of "failure to hire." The investigator examined this claim and at the hearing entertained comments and evidence on this issue although the complaint was never formally amended. In evaluating the failure to hire issue, it was in fact appropriate for the investigator and the commission to consider the entire work history of the plaintiff which was certainly an appropriate criterion for Sikorsky itself to take into account. A close reading of the findings and conclusions submitted in conjunction with the no reasonable cause conclusion indicates to the court that the three year reviews were the factors relied on by the investigator in reaching her conclusion that there was substantial evidence to support the no reasonable cause decision regarding the complaint concerning the actual discharge of the plaintiff.
At the hearing itself, the plaintiff testified first and went immediately into a defense of his entire work history at the defendant company. His theory of what was involved in his discharge is that because of his age and disability this resulted in a "high cost" to the company and that was why he was let go. Having taken this position, it is not unfair for the agency hearing officer to look at the entire work history of the plaintiff for impeachment purposes in the sense that it rebuts any notion that the more recent relatively poor reviews of the plaintiff in various distinct categories of work for the three year comparison period were a recent fabrication or otherwise pretextual.
 (d)
Another contention raised by the plaintiff is that discrimination is shown by the fact that by a failure to hire him when a position was advertised at a later time.
The defendant objects to this matter being considered since the original complaint did not raise this claim. Groton v. CHRO,169 Conn. 89, 99 (1975). It is argued that the plaintiff's affidavit must provide actual notice of the charges made.Veider-Root v. CHRO, 165 Conn. 318, 328 91973). A letter to the plaintiff wrote to a CHRO staff attorney is referenced and the claim is made that the letter nowhere indicates the plaintiff CT Page 8198 wished to amend his complaint.
The court is reluctant to enforce rules of common law pigeonhole pleading on the procedure of agencies dealing with the general public whose reason for existence is to enforce laws against discrimination. Moreover, the failure to hire claim was clearly raised at the hearing and a representative of the defendant explicitly indicated that he was ready to deal with the merits of the issue. A large part of the hearing was devoted to this matter. The defendants' representatives were clearly prepared to deal with it and did so with numerous references to the plaintiff's work history. The complaint was effectively amended and should be regarded as amended so as to present this claim.
However, having said all that, the court concludes that the record provides substantial evidence to support the hearing officer's conclusion that there was no reasonable cause to conclude discrimination based on age or disability played a part in the refusal to rehire the plaintiff.
The plaintiff's entire work history was reviewed and testified about at the hearing before the agency. The defendants' representatives clearly articulated the requirements of the position for which the plaintiff was applying and, given those requirements in light of the plaintiff's past work record, the court finds there was substantial support for the hearing officer's conclusion in the evidence. The plaintiff received consistently low ratings in areas which would have been important areas of responsibility in the job he was applying for. It should also be noted that in 1989 he had to enroll in a program to improve his work skills with the possibility of termination if those skills were not improved. The defendants' representatives knew of only one other salaried Sikorsky employee at the plaintiff's level of employment who ever had to enter this program. In two years, the plaintiff did not receive raises because of his performance and he apparently had never been recommended for a promotion.
The testimony by the defendants' representatives as to why the plaintiff was not rehired or even considered for rehiring is highly credible given the record and that record provides a substantial basis for concluding there was no discriminatory motive in the action taken. CT Page 8199
It also should be noted that the record indicates that the defendant was found totally disabled by the Social Security Administration in February 1994; he had apparently been receiving benefits and, in order to achieve that status, had to submit to medical examination and apply for disability status. It strains credulity to think that under these circumstances that he could perform the job he applied for at Sikorsky's in January 1995, although at the hearing he said he felt he could do the job.
Whether or not receipt of such benefits should stop a person from making a claim of employment disability discrimination,McNemar v. The Disney Store, 91 F.3d 610, 628 (C.A. 3, 1996), at the least, receipt of such benefits could be regarded as relevant evidence as to whether such a person is qualified to seek employment. Robinson v. Neodata Services Inc., 94 F.3d 499, 500; fn. 2 (C.A. 8, 1996); cf. August v. Offices Unlimited Inc.,981 F.2d 576, 581 (C.A. 1, 1992). Even if this goes too far, since Social Security determinations are not synonymous with whether someone is a "qualified person" under the Americans With Disabilities Act, Smith v. Dovernmuehle Inc., 859 F. Sup. 1138,1141 (N.D., Ill., 1994); cf. Overton v. Reilly, 977 F.2d 1190,1196 (C.A. 7, 1992), at least such evidence might have some impeachment value against the person who after all made the disability application.
The court concludes, however, that even absent the application and receipt of such benefits and the disability status and without giving these matters any consideration, there is substantial evidence to support the hearing officer's decision of no reasonable cause on the failure to hire issue.
For the foregoing reasons, the appeal is dismissed.
Corradino, J.